## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

IN RE:  160 Royal Palm, LLC,                    Chapter 11 Case
                                                Case No. 18-19441-EPK

Debtor.

_____ /

### KK-PB FINANCIAL, LLC'S NOTICE OF APPEAL TO DISTRICT COURT

KK-PB Financial, LLC ("KK-PB Financial" or "Appellant"), by and through its undersigned counsel, pursuant to 28 U.S.C. § 158(a), Federal Rule of Bankruptcy Procedure 8003, and Local Rule 8003-1, appeals to the United States District Court for the Southern District of Florida from the *Order Approving Sale of Assets to LR U.S. Hotels Holdings, LLC Free and Clear of All Liens, Claims, and Encumbrances* [ECF No. 651] (the "Sale Order"), entered on March 12, 2019.  A copy of the Sale Order is attached hereto as **Exhibit A**.  KK-PB Financial has paid the prescribed fee contemporaneously with the filing of this Notice of Appeal.

The names of all parties to the Sale Order from which the Appellant appeals, and the names, addresses, and telephone numbers of their respective attorneys are as follows:

### APPELLANT

Party:      KK-PB Financial, LLC, secured creditor in the above-captioned chapter 11 case.

Attorneys:  WHITE & CASE LLP

            John K. Cunningham
            James N. Robinson
            Fan B. He
            Southeast Financial Center, Suite 4900
            200 South Biscayne Boulevard
            Miami, Florida  33131-2352
            Telephone: (305) 371-2700
            Facsimile:  (305) 358-5744

**APPELLEE**

Party:       160 Royal Palm, LLC, the Debtor in the above-captioned chapter 11 case.

Attorneys:   SHRAIBERG, LANDAU, & PAGE, P.A.

             Philip J. Landau
             Bernice C. Lee
             Eric S. Pendergraft
             2385 NW Executive Center Drive, #300
             Boca Raton, Florida 33431
             Telephone:  (561) 443-0800
             Facsimile:  (561) 998-0047


**OTHER PARTIES**

Party:       LR U.S. Hotels Holdings, LLC, an interested party in the above-captioned chapter 11 case.

Attorneys:   AKERMAN LLP

             Eyal Berger
             350 East Las Olas Boulevard, Suite 1600
             Fort Lauderdale, Florida 33301
             Telephone:  (954) 463-2700
             Facsimile:  (954) 463-2224


Party:       Town of Palm Beach, an interested party in the above-captioned chapter 11 case.

Attorneys:   JONES FOSTER JOHNSTON & STUBBS, P.A.

             Allen R. Tomlinson
             505 South Flagler Drive, Suite 1200
             West Palm Beach, Florida 33401
             Telephone:  (561)-659-0442
             Facsimile:  (561) 650-5300


Party:       Town of Palm Beach Code Enforcement Board, an interested party in the above-captioned chapter 11 case.

Attorneys:   JONES FOSTER JOHNSTON & STUBBS, P.A.

             Allen R. Tomlinson

505 South Flagler Drive, Suite 1200
West Palm Beach, Florida 33401
Telephone:  (561)-659-0442
Facsimile:  (561) 650-5300

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court

for the Southern District of Florida and I am in compliance with the additional qualifications to

practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this day, the foregoing document was electronically filed

with the Clerk of the Court using CM/ECF.  I further certify that the foregoing document is being

served this day on all parties via transmission of Notices of Electronic Filing generated by

CM/ECF.

Dated:  March 12, 2019
      Miami, Florida                    WHITE & CASE LLP

                                          By: */s/ James N. Robinson*
                                          James N. Robinson
                                          Florida Bar No. 608858
                                          John K. Cunningham
                                          Florida Bar No. 542490
                                          Fan B. He
                                          Florida Bar No. 95597
                                          Southeast Financial Center, Suite 4900
                                          200 South Biscayne Boulevard
                                          Miami, Florida  33131-2352
                                          Telephone: (305) 371-2700
                                          Facsimile:  (305) 358-5744

                                          *Counsel for Appellant, KK-PB Financial, LLC*

3

**<u>EXHIBIT A</u>**

Sale Order



**ORDERED in the Southern District of Florida on March 12, 2019.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

160 Royal Palm, LLC,                   Case No.  18-19441-EPK

    Debtor.                              Chapter 11

_____/

### ORDER APPROVING SALE OF ASSETS TO LR U.S. HOTELS HOLDINGS, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

THIS MATTER came before the Court for final hearing on March 8, 2019 at 10:00 a.m. EST (the "Sale Hearing") upon the *Expedited Motion to Approve (I) Private Sale of Real Property to LR U.S. Hotels, LLC and (II) Authorize Debtor's Advance of $250,000 to the Town of Palm Beach on Behalf of Buyer of Debtor's Assets* [ECF No. 604] (the "Motion") filed by 160 Royal Palm, LLC (the "Debtor"), and the *Order: (I) Granting Expedited Motion Seeking Approval of Procedures for Amended Sale Process and (II) Scheduling Final Hearing to Consider Approval of Sale of Assets Free and Clear of Liens, Claims and Encumbrances* [ECF No. 619] (the "Modified Bid Procedures Order").

48207401;2

Having reviewed the Motion, having considered the evidence admitted during the hearing, and having heard the arguments of counsel and being otherwise fully advised in the premises, for the reasons stated on the record at the hearing, and with the Court's oral findings of fact and conclusions of law stated at the hearing---which are attached hereto as **Exhibit A**---being fully incorporated herein,[1] the Court **FINDS and CONCLUDES** as follows:

A.     The findings and conclusions incorporated herein and set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.[2]

B.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     The predicates for the relief sought in the Motion are 11 U.S.C. §§ 105, 363 and 365 and Federal Rules of Bankruptcy Procedure 6004 and 6006

D.     Due and adequate notice of the Motion and of the relief requested therein has been given in accordance with the provisions of 11 U.S.C. §§ 102(1), 363 and 365, and Federal Rule of Bankruptcy Procedure 2002, 6004, 6006, and 9014. No other or further notice of the Motion, the proposed sale, or the Modified Bid Procedures Order is or shall be required. Such notice is evidenced in the certificates of service attached to the Motion and at ECF Nos. 94, 160, 276, 521, 540, and 620.

---

[1] During the Court's delivery of its findings of fact and conclusions of law at the close of the hearing, the Court referred to the testimony of Gregg Glickstein. However, Gregg Glickstein did not testify at the hearing; rather, Cary Glickstein testified, and all references to the testimony of Gregg Glickstein should be construed as referring to the testimony of Cary Glickstein.

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

E.      The Asset Purchase Agreement (the "APA") attached to the Motion as Exhibit A between the Debtor and LR U.S. Hotels Holdings LLC ("LR", and  with any wholly-owned assigns of LR, the "Buyer") for the purchase of the Assets defined therein for the cash price of $39,600,000 and the assumption of certain obligations set forth in Section 6.2 of the APA (the "Purchase Price") was the result of arm's-length, good-faith negotiations, and did not involve an agreement among potential bidders to control the sale price or other collusion.

F.      The Assets (as such term is defined in the APA), including the real property located at 160 Royal Palm Way, Palm Beach, Florida, are property of the Debtor's bankruptcy estate under 11 U.S.C. § 541 and the Debtor has the requisite authority to convey the Assets.

G.      The Debtor and the Buyer are proceeding in good faith, and the sale contemplated in the APA is being proposed in good faith.

H.      The Buyer is unrelated to the Debtor or any of Debtor's current management, agents, representatives, or professionals.  The Buyer is also unrelated to the Debtor's past and present principals and owners.

I.      The Buyer is neither a successor nor a continuation of the Debtor.

J.      There is a sound business justification for the sale of the Assets, and the Purchase Price is fair and reasonable.

K.      A sale pursuant to 11 U.S.C. § 363(b) and (f) is the only current viable alternative for preserving and capturing the value of the Assets for the benefit of the Debtor's estate.

L.      The Purchase Price as detailed in the APA offered by the Buyer and accepted by the Debtor constitutes the highest and best offer received by the Debtor for the Assets.

M.     The APA and the transactions thereunder or in connection therewith, including, without limitation, any assumption and assignment of executory contracts or unexpired leases, are not being entered into to escape liability for the estate's debts.

N.     The Debtor's review of the available public records evidences the following alleged potential claims, liens, interests and encumbrances relating to the Assets (collectively, the "Liens and Other Encumbrances"):

       a.     Interest of Palm House LLC, by reason of it being the sole member of the Debtor, and by reason of Palm Beach County Circuit Court Case No. 15-14228;

       b.     Interest of Ryan Black, by reason of any interest in the Debtor, by reason of Palm Beach County Circuit Court Case No, 14-12824, and by reason of Palm Beach County Circuit Court Case No. 15-14228;

       c.     Interest of Gerry Matthews, by reason of any interest in the Debtor, by reason of Palm Beach County Circuit Court Case No. 14-12824, and by reason of Palm Beach County Circuit Court Case No. 15-14228;

       d.     Interest of Robert V. Matthews, by reason of any interest in the Debtor;

       e.     Interest of Joseph J. Walsh, Sr., by reason of any interest in Palm House Hotel LLLP;

       f.     Mortgage of Palm House Hotel, LLLP, a Florida limited liability company, recorded in Palm Beach County Official Records Book 27103, Page 129; and Palm Beach County Circuit Court Case 14-14382 and Case 15-14480;

       g.     Lien of James F. Biagi, P.E., by reason of the Default Final Judgment filed in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, under Case No. CACE 15-005370 (08) recorded in Palm Beach County Official Records Book 27660, Page 1139;

       h.     Lien of Richard's Woodwork, Inc., a/k/a RFW Cabinetry and Millwork, a Florida profit corporation, by reason of the Final Judgment on Default for Plaintiff filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under Case No. 2015CA004303 AB, recorded in Palm Beach County Official Records Book 27702, Page 1461;

       i.     Lien of David Campanaro by reason of the Final Judgment filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under Case No. 2015CA005120XXXMBAF, recorded in Official Records Book

28122, Page 1965;

j.      Lien of Place For Tile, Inc., by reason of the Final Default Judgment Against Defendant 160 Royal Palm, LLC, filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under Case No. 2015CA002935XXXXMB, recorded in Palm Beach County Official Records Book 28517, Page 1307 and in Official Records Book 29606, Page 1097;

k.  Lien of TWG Enterprises Waterproofing & Painting, Inc., by reason of the Final Judgment filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under Case No. 2015CA012471XXXXMB, recorded in Palm Beach County Official Records Book 28038, Page 734;

l.  Lien of Van Linda Iron Works, Inc., a Florida corporation, by reason of the Amended Default Final Judgment filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under Case No. 2015CA013194XXXMB, recorded in Palm Beach County Official Records Book 28140, Page 1634;

m.  Lien of New Haven Contracting South, Inc., by reason of the Final Default Judgment Against Defendant 160 Royal Palm, LLC, filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, under Case No. 2015CA013244XXXXMB, recorded in Palm Beach County Official Records Book 28877, Page 790;

n.  Lien of Architectural Precast & Foam, LLC, by reason of the Final Judgment of Foreclosure After Default recorded in Palm Beach County Official Records Book 28560, Page 1512, and by reason of the Final Judgment for Attorney's Fees and Costs recorded in Official Records Book 28560, Page 1510, and by reason of the Consent Final Judgment for Post-Judgment Attorney's Fees and Costs Pursuant to Fla. Stat. 57.115 recorded in Official Records Book 28935, Page 975, all under Case No. 2015CA014459XXXXMB, in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida;

o.  Lien of Xpert Elevator Services, Inc., by reason of the Claim of Lien Renewal recorded in Palm Beach County Official Records Book 29442, Page 819, which renewed that certain Claim of Lien Renewal recorded in Palm Beach County Official Records Book 28682, Page 78, which renewed that certain Claim of Lien Renewal recorded in Palm Beach County Official Records Book 27916, Page 492, which renewed that certain Claim of Lien recorded in Palm Beach County Official Records Book 27194, Page 1278;

p.  Interest of the Securities and Exchange Commission by reason of United States District Court, Southern District of Florida, West Palm Beach Division Case No. 18-81038;

q.  Interest of Maria Titova, as purported member of Palm House Hotel LLLP, the holder of a mortgage encumbering the subject property, per Palm Beach County Circuit Court Case No. 16-12723;

r.  Interest of Daniel Gorman, as to any interest disclosed by Memorandum of Understanding Agreement recorded in Palm Beach County Official Records Book 27522 Page 958;

s.  Liens or interests of the Town of Palm Beach and the Town of Palm Beach Code Enforcement Board as set forth in Claim No. 90 filed by such entities in this case, and by reason of the action by the Debtor against The Town of Palm Beach seeking extension of development permits in Palm Beach County Circuit Court Case No. 12-23613;

t.  Interests of the individuals, known in this case as the EB-5 Investors, identified in the Notice of Appearance filed by Edward A. Marod, Esq. in this case at ECF No. 31;

u.  Interests of the individuals, known in his case as the other EB-5 Creditors, identified in Claim Nos. 73 through 85; and

v.  The lien of the Palm Beach County Tax Collector as evidenced by Claim No. 88 filed by that entity.

O.    No holder of any lien, claim, interest, or encumbrance, including the holders of the Liens and Other Encumbrances (collectively, the "Interest Holders") timely objected to the Motion, and therefore, all Interest Holders have consented to the sale of the Assets to the Buyer free and clear of all interests, claims, liens, and encumbrances.  Accordingly, the sale of the Assets free and clear of all liens, claims, interests, and encumbrances is appropriate pursuant to 11 U.S.C. § 363(f)(2).

P.    The Purchase Price for the Assets exceeds the aggregate value of all liens on the Assets.  Accordingly, the sale of the Assets free and clear of all liens is appropriate pursuant to 11 U.S.C. § 363(f)(3).

Q.    The sole timely objection to the Motion was lodged by KK-PB Financial, LLC at ECF No.629 with respect to Claim No. 70-3.  However, as set forth in this Court's Order at ECF

No. 603, Claim No. 70-3 is not an allowed claim, and KK-PB Financial, LLC does not hold a lien, claim, encumbrance, or interest in or on the Assets with respect to Claim No. 70-3. Further, even if it could be argued that the claim of KK-PB Financial, LLC has not been disallowed, KK-PB Financial, LLC's interest in the Assets with respect to Claim No. 70-3 would, at a minimum, be in bona fide dispute, and the sale of the Assets free and clear of all liens, claims, interests, and encumbrances is appropriate pursuant to 11 U.S.C. § 363(f)(4).

R.  KK-PB Financial, LLC has not raised any objection under 11 U.S.C. § 363(f) and thus any such objection has been waived. This is another independent basis to approve the sale of the Assets free and clear of all liens, claims, interests, and encumbrances.

S.  The Buyer would not have entered into the APA and will not consummate the transactions contemplated thereunder, thus adversely affecting the Debtor's estate and creditors, if the sale of the Assets is not to be entirely free and clear of all interests of any kind whatsoever, or if the Buyer will, or in the future could, be liable for any such interests (except for obligations expressly assumed in the APA).

T.  Except as otherwise provided herein, all of the Debtor's title and interests in the Assets to be acquired by the Buyer under the APA shall be, as of the closing of the sale of the Assets transferred to and vested in the Buyer. Upon the occurrence of the closing and except as otherwise provided herein, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of title to the Assets acquired by the Buyer under the APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Buyer.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  The Motion [ECF No. 604] is **GRANTED** as set forth herein.

2.      The Objection to Private Sale of Real Property to LR U.S. Hotels Holdings, LLC Free and Clear of Liens, Claims and Encumbrances [ECF No. 629] filed by KK-PB Financial, LLC, as well as any supplement thereto, including the document filed at ECF No. 631, and any oral objection lodged by KK-PB Financial, LLC, are OVERRULED.

3.      Any interested party that has not filed a timely written objection to the Motion is deemed to consent to the sale of the Debtor's Assets to the Buyer under the terms of the APA and this Order.

4.      Any remaining objections to the Motion asserted prior to or at the Sale Hearing are **OVERRULED** *in toto*.

5.      The APA is **APPROVED**, and the parties thereto are authorized to immediately close and effectuate the sale of the Assets and all transactions set forth therein.

6.      The provisions of this Order shall be binding upon and inure to the benefit of the Buyer and the Debtor and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtor's estate or any estate in any successor cases).  No third parties are intended to be or shall be deemed to be third party beneficiaries of this Order.

7.      The sale and transactions contemplated by the APA are undertaken by the Buyer in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization for the Debtor and the Buyer to consummate the sale and any transactions related to the sale shall not affect the validity of the sale of the Assets to the Buyer or its assigns, unless such authorization is duly stayed pending such appeal.  The Buyer is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

8.      The Buyer entered into the proposed sale without collusion, in good faith, and from an arm's length bargaining position, and has not violated 11 U.S.C. § 363(n) by any action or inaction, and the APA does not violate the provisions of 11 U.S.C. § 363(n).  The Debtor and the Buyer have not engaged in any conduct that would cause or permit the APA to be avoided under 11 U.S.C. § 363(n).

9.      Pursuant to 11 U.S.C. §§ 363(f)(2), (3), and (4), and except as otherwise provided herein, upon entry of this Order and compliance with the requirements to close set forth herein and in the APA, the transfer of the Debtor's right, title, and interests in the Assets to the Buyer is in all respects a valid, legal and effective transfer of Assets to the Buyer, under Section 363(f) of the Bankruptcy Code, free and clear of all liens (as that term is defined in section 101(37) of the Bankruptcy Code), claims (as that term is defined in section 101(5) of the Bankruptcy Code), interests or encumbrances of any kind or nature whatsoever, including (but not limited to): (a) liens and claims that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's interest in the Assets, or any similar rights, (b) liens and claims relating to taxes arising under, out of, in connection with, or in any way relating to the operation of the Assets prior to closing, and (c) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, including, but not limited to, any restriction on the , transfer, receipt of income or other exercise of any attributes of ownership, and (ii) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or any of the Debtor's predecessors or affiliates, claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind and nature, whether known or

unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity, or otherwise, including (but not limited to) claims otherwise arising under doctrines of successor liability (collectively, "Interests").

10. The sale of the Assets to the Buyer shall also be free and clear of any claims of successor liability. The Buyer, as the result of any action taken in connection with the purchase of the Assets, shall not be deemed to (a) be the successor of the Debtor; (b) have, *de facto* or otherwise, merged with or into the Debtor; (c) be a mere continuation or a substantial continuation of the Debtor or for payment of any benefit(s) accruing to the Debtor; (d) be a successor in interest to the Debtor under any theory of successor liability for employee-related claims against the Debtor and/or its principal brought under the Fair Labor Standards Act; or (e) be a successor of or to the Debtor for any other type of claims, interests or causes of action against the Debtor or the Assets of any kind whatsoever.

11. Any liens, claims, interests, or encumbrances which may exist, including but not limited to the Liens and Other Encumbrances, the claims included in the Debtor's schedules and proofs of claims filed against the Debtor, shall attach to the net proceeds of the sale of the Assets in the order of their priority, with the validity, force and effect that they now have, if any, against the Assets, subject to the rights, claims, defenses and objections of the Debtor and all interested parties with respect to such liens, claims, interests, or encumbrances, and further subject to the terms of any chapter 11 plan filed in this case and confirmed by the Court.

12. The Buyer is authorized to execute any document necessary to release, extinguish, discharge, or avoid any liens, claims, interests, or encumbrances any party continues to assert against the Assets or Buyer subsequent to the entry of this Order.

13.     The Buyer is authorized to obtain any further order from this Court to release, extinguish, discharge, or avoid any liens, claims, interests or encumbrances any party continues to assert against the Assets of the Buyer subsequent to the entry of this Order.

14.     All Interests Holders asserting liens, claims, interests or encumbrances against the Assets are hereby enjoined from continuing to assert such liens, claims, interests or encumbrances against the Assets or the Buyer subsequent to the entry of this Order.

15.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing liens, claims, interests, or encumbrances in the Assets shall not have delivered to the Debtor prior to the closing of the sale of Assets, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Assets, then following closing of the sale of the Assets to the Buyer, (a) the Debtor is authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets, and (b) the Buyer is authorized to file, register, or otherwise record a certified copy of this Order in the public records of Palm Beach County which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all claims, liens, interests, and encumbrances in the Assets of any kind or nature whatsoever.

16.     The Debtor shall cause the return of the deposit paid by RREF II Palm House, LLC pursuant to the terms set forth in the Asset Purchase Agreement executed on September 27, 2018 by the Debtor and RREF II Palm House, LLC.

17.     Upon the closing of the sale of the Assets to the Buyer, from the proceeds of the sale, the Debtor shall, expeditiously, pay the $350,000 breakup fee now owed to RREF II Palm

House, LLC as a result of the sale.

18.     Upon the closing of the sale of the Assets to the Buyer, the Buyer shall expeditiously pay to the Debtor the $250,000 advanced by the Debtor on the Buyer's behalf via the Debtor's payment of such sum to the Town of Palm Beach and the Town of Palm Beach Code Enforcement Board on or about February 28, 2019.  From such sum, the Debtor shall repay the court-approved retainer funds advanced by Shraiberg, Landau & Page, P.A. from that law firm's trust account, with such funds to be placed back in trust as part of the court-approved retainer.

19.     All other terms and conditions set forth in the APA are incorporated herein by reference.  The failure to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety, as set forth herein.

20.     Subject to the terms of this Order and the APA, the Debtor is authorized and directed to execute, deliver, receive, exchange and record any and all documents and instruments necessary to effectuate the sale of the Assets pursuant to the terms of the APA.

21.     The Debtor has full power and authority and is instructed to execute the documents contemplated in the APA including without limitation any conveyance deeds and bill of sale, together with any other documents as may reasonably be required to implement and consummate the sale of the Assets by the Debtor to the Buyer and the transactions contemplated under the APA, which actions have been duly and validly authorized by the Debtor, and the Debtor has all the power and authority necessary to consummate the transactions contemplated in this Order.

22.     The Debtor shall immediately serve a copy of this Order pursuant to Bankruptcy

Rules 6004(a), (c), 6006, and 2002(a)(2) upon: a) the Office of the United States Trustee; b) all creditors of the Debtor; c) all Interest Holders asserting a claim, lien, encumbrance or interest on or in the Debtor's assets; and d) all parties who have requested notices pursuant to Rule 2002.

23.     The Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments and modifications thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: a) subject to the terms and conditions of the APA and this Order, compel delivery of the Assets to the Buyer or its assigns; b) compel delivery of the Purchase Price by the Buyer, or its assigns, or performance of other obligations of the Buyer, or its assigns, contained in the APA or agreements executed by the Debtor in connection therewith; c) compel performance of all obligations of the Debtor contained in the APA; d) resolve any disputes arising under or related to the APA, except as otherwise provided therein; and e) interpret, implement, and enforce the provisions of this Order.

24.     The Court expressly waives the stay requirement enumerated in Federal Rule of Bankruptcy Procedure 6004(h) such that entry of this Order shall not be subject to an automatic fourteen (14) day stay and such that this Order is effective immediately.  Notwithstanding the possible applicability of Federal Rule of Bankruptcy 6006(d) and 7062, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

###

Submitted by:

Philip J. Landau
Shraiberg, Landau & Page, P.A.
Counsel for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

*Philip J. Landau is directed to serve a copy of this Order on all parties in interest and to file a certificate of service.*

In re: 160 Royal Palm, LLC
Case Number 18-19441
Chapter 11

After an evidentiary hearing held on March 8, 2019, on the *Expedited Motion to Approve (I) Private Sale of Real Property to LR U.S. Hotels Holdings, LLC and (II) Authorize Debtor's Advance of $250,000 to the Town of Palm Beach on Behalf of Buyer of Debtor's Assets* [ECF No. 604] and the *Debtor's Motion to Strike KK-PB's Objection to Private Sale* [ECF No. 630], the Court made the following findings of fact and conclusions of law on the record:

This is the Court's ruling on the motion for sale filed by 160 Royal Palm, LLC, the debtor in this case. The motion can be found in the docket at ECF number 604. On February 28, 2019, the Court held a hearing on the sale motion as well as a hearing on a motion to shorten notice for the proposed sale. The motion to shorten notice was filed at ECF number 608 and was granted by an order entered at ECF number 627. The motion for sale was granted in part by an order entered at ECF number 619. The Court granted the sale motion to the extent that the Court approved a revised procedure for the sale of the Debtor's hotel property and related assets, which are substantially all of the assets in this bankruptcy estate. The Court's revised sale procedures order, entered at ECF number 619, reserved for today the consideration of any objections to sale under section 363 of the Bankruptcy Code and applicable law and the potential approval of a sale of the Debtor's assets to the winning bidder under a revised sale procedure.

There was only one timely objection filed to the sale motion. KK-PB Financial, LLC filed a timely written objection at ECF number 629. The objection was filed solely on behalf of a single entity identified as KK-PB Financial, LLC. The filed objection references only KK-PB's mortgage claim which was previously disallowed in this case.

The sale motion now before the Court is a continuation of a sale process started by the Debtor on October 1, 2018, when the Debtor filed its initial motion for approval of a sale procedure. That motion can be found at ECF number 92. The Court held a hearing on that earlier sale motion on October 10, 2018, and entered a sale procedures order on October 16, 2018. That order is at ECF number 154.

The initial sale procedures order set a bid deadline of November 9, 2018, an auction date of November 16, 2018, and a hearing to consider approval of the sale immediately following the auction on the same date. Consistent with regular practice in this district and elsewhere, where an auction procedure is employed, the initial sale procedures motion set up a two-step process. The first step was for the Court to approve the procedure for obtaining qualified bids and the auction itself, and the second step would be for the Court to consider the proposed sale to the winning bidder selected by the Debtor. As I will address in a few minutes, the motion for sale before the Court today relies on a similar procedure.

The originally proposed sale procedure was interrupted by litigation between the Debtor and the EB-5 investors on one side and KK-PB Financial on the other regarding, among other things, whether KK-PB would be permitted to credit bid in connection with the sale of the hotel property. The Debtor's motion to deny KK-PB any right to credit bid and KK-PB'S mirror image motion to

estimate its claim were initially set for hearing on October 24, 2018. Those matters were then set for evidentiary hearing on December 6, 2018.

In the meantime, the Debtor negotiated an important settlement with the Town of Palm Beach. You can find the Court's order approving that settlement at ECF number 204, entered November 6, 2018. That order was final long ago. The Debtor and the Town settled two claims of the Town, exceeding $4 million in the aggregate, in exchange for payment of $250,000.00, among other things. Part of the Town's claim is potentially a secured claim. It is important to note that, absent consummation of the settlement, the Town's claims continue to grow post-petition. The settlement agreement with the Town required that the settlement amount be paid and certain other actions be undertaken by a qualified buyer, a defined term in the settlement agreement. The original payment deadline was December 31, 2018, and the qualified buyer could obtain an extension of development approvals through April 30, 2019 provided that not later than that date the qualified buyer pursued with the Town various requirements in connection with the continued development of the hotel project, spelled out in detail in the settlement agreement. I am leaving out a number of conditions contained in the agreement with the Town. In general, the settlement with the Town of Palm Beach is significant for this bankruptcy estate because it does two things. It greatly reduces claims against the estate and stops the continued accrual of claims that may be administrative expenses, thus coming ahead of unsecured creditors in this case. And it gives the Debtor the opportunity to sell the hotel property to a party acceptable to the Town along with the ability of the purchaser to preserve certain important development rights.

Strangely, KK-PB's third argument in its written objection to the sale motion presented a belated objection to the settlement with the Town of Palm Beach. The settlement with the Town was approved after a hearing on notice to all parties in interest including KK-PB. In a supplement filed at ECF number 631, KK-PB withdrew that objection, but raised a concern that a disclosure made at the initial hearing on the present sale motion might affect the ability of the new buyer identified in the present sale motion to take advantage of the settlement with the Town. The issue of whether both the original stalking horse bidder and the proposed new buyer were qualified buyers under the settlement with the Town was considered at that initial hearing on the sale motion before the Court today. Indeed, the Court took a recess to permit counsel for the Debtor, the Town, and the bidding parties to address the issue. As a result, the order setting this sale hearing, entered at ECF number 619, includes a relevant finding consistent with the agreement that counsel for the Debtor and the Town announced on the record. This revised objection of KK-PB is therefore overruled.

Because of the litigation with KK-PB over its claim and its claimed right to credit bid, the Debtor requested and the Court approved a revised bid procedures order. You can find the Court's order at ECF number 273. The Court set a new bid deadline of December 7, 2018, and set the auction and sale hearing on December 14, 2018.

In light of the extensive discovery undertaken by the Debtor, the EB-5 investors, and KK-PB in connection with KK-PB's alleged mortgage claim, the Debtor asked to move the evidentiary hearing on the motion to estimate KK-PB's claim and the Debtor's motion to deny KK-PB any credit bid right, and also to further delay the previously approved sale procedures. The Court entered an order at ECF number 389, on December 14, 2018. The evidentiary hearing was moved to several days in January 2019, the bid deadline was moved to January 21, 2019, and the auction and sale hearing were moved to January 28, 2019. The Court later entered an order addressing procedures for the evidentiary hearing, at ECF number 480, which order was amended at ECF number 511.

After the first two days of the evidentiary hearing on KK-PB's mortgage claim and whether KK-PB would have a credit bid right, the Debtor and KK-PB entered into settlement negotiations and announced a potential settlement. As a result, the Court entered an order at ECF number 518 continuing generally the matters that had been set for evidentiary hearing, pending the presentation and potential approval of the settlement by the Court.

At the Debtor's request, the Court again moved the bid deadline to January 31, 2019 and the auction and sale hearing to February 5, 2019. You can find this order at ECF number 520.

A motion to approve the settlement between the Debtor and KK-PB was filed at ECF number 523.

In light of the pending settlement, at the Debtor's request the Court again delayed the bid deadline to March 4, 2019 and the auction and sale hearing to March 8, 2019. You can find this order at ECF number 537. This is the most recent order amending the original sale procedure that was first presented to the Court in October 2018. The Court notes that this revised order was served on all parties in interest, including any and all parties who may have a lien or interest in the property to be sold, more than 30 days ago. So, while the Court has shortened notice of the sale proposed in the sale motion currently before the Court, all parties in interest have had notice for a month that there would be a sale on this date of the Debtor's hotel and related assets. Indeed, all parties in interest have had notice of a proposed sale of these assets since last fall.

The Court held a hearing on the proposed settlement between the Debtor and KK-PB on February 8, 2019 and disapproved the settlement by order entered February 11, 2019. That order is at ECF number 560 and incorporates detailed findings of fact and conclusions of law made on the record. The Debtor's manager, Gregg Glickstein[1], testified today that even as the Court was hearing the Debtor's motion to approve that settlement, KK-PB had failed to tender the deposit required under the settlement. In other words, KK-PB was in default of the settlement that KK-PB wanted the Court to approve. If the Court had known this at the time, this would have been additional reason to disapprove the proposed settlement. But today that testimony bolsters the Debtor's reasonable exercise of its business judgment in determining that it is not in the best interests of the estate to pursue a potential deal with KK-PB, which I will address in a few minutes.

Because the settlement was not approved, the parties returned to evidentiary hearing on estimation of KK-PB's claim and the Debtor's motion to prohibit KK-PB from credit bidding. By order entered at ECF number 569, the Court set the remaining two days of evidentiary hearing and then closing arguments on a separate day. After closing arguments on February 22, 2019, the Court made extensive findings of fact and conclusions of law which are incorporated into a written order entered at ECF number 603. In short, the Court determined to estimate the claim of KK-PB on account of its note and mortgage as an unsecured claim in the amount of $0 for all purposes in this case. The Court ruled that KK-PB has no right to credit bid in a sale of the debtor's assets on account of the note and mortgage. The Court's order was entered on February 26, 2019 and so the appeal period on that order will run on March 12, 2019, which is next Tuesday. That Court's order entered at ECF number 603 remains subject to a motion for rehearing or the filing of an appeal has no impact on its validity or effectiveness. Under the Bankruptcy Rules and applicable law, which

---

[1] The Court intended to refer to Mr. Cary Glickstein.

provide only a few exceptions not relevant here, that order was immediately effective upon entry. It is not stayed.

During all of these delays in the sale procedure, the Debtor has been actively marketing its hotel property and otherwise attempting to maintain the value of its assets for the bankruptcy estate and valid creditors. Not only did the Debtor obtain extensions from its original stalking horse bidder, to delay the auction and sale to permit litigation with KK-PB, but the Debtor has negotiated a contract substantially more favorable to the estate than its original stalking horse contract, which new contract was itself subject to additional bidding. And, the Debtor has negotiated extensions of the settlement agreement with the Town of Palm Beach to permit bidders and, more importantly, the bankruptcy estate to take advantage of that important settlement. The sale motion before the Court today is a continuation of the Debtor's significant efforts to achieve the best possible recovery for valid creditors of this bankruptcy estate, including dozens of foreign investors who claim that tens of millions of dollars they sent to the United States were funneled through the hotel project and allegedly fraudulently misappropriated by persons then in control of the Debtor and those in conspiracy with them.

The Debtor's motion at ECF number 604 represents the Debtor's effort to obtain approval of a sale of the Debtor's hotel property and related assets to LR U.S. Hotels Holdings, LLC, subject to an over-bid from the original stalking horse bidder, RREF II Palm House LLC, and subject to a potential final bid from LR. The Debtor has vetted both of these bidders and determined that they are ready, willing, and able to consummate the contracts they presented. The proposed purchase price offered by LR is $39.6 million plus certain assumed obligations. The cash portion of the purchase price offered by LR is $7.6 million, or nearly 24%, higher than the original stalking horse bid presented to the Court in October 2018.

As a first step in the process proposed in the Debtor's sale motion, on February 28, 2019, the Court considered revised procedures for the sale of the Debtor's hotel and related assets and entered a revised procedures order at ECF number 619. In connection with that revised procedure, the Debtor withdrew its original sale motion. The new procedure contemplates what the Debtor described as a private sale to LR subject to an over-bid from RREF II and then, potentially, a final bid from LR. But, in reality, the new procedure approved by the Court is simply an amendment to the original auction procedure with two potential bidders. This is because the contract attached to the present sale motion, the form of which the Court has already approved, permitted a potential higher and better offer from the original stalking horse bidder, and then provided an additional right of the new buyer to top even such a final bid by the original stalking horse bidder. In other words, the revised procedure approved by this Court contemplated the possibility of further bidding in the form of two final bids. In approving the revised procedure, the Court found this arrangement appropriate under the circumstances as it will permit the Debtor to attempt to obtain the best possible recovery for the estate. Based on Mr. Glickstein's credible testimony today, after many months of extensive marketing and communications with potential buyers of this significant asset, LR and RREF II are the only bidders now interested in the hotel property at the present price levels. This is other than the proposal of KK-PB presented today at the hearing, which I will address in a few minutes. Thus, in effect, the revised procedure is the equivalent of requiring the final two bidders to present their last two offers in a controlled process. Given the significance of the assets to be sold and the sophistication of the bidders, this arrangement is appropriate. The Court finds that this procedure was reasonably designed to obtain the best possible recovery for the estate and is well within the exercise of the Debtor's reasonable business judgment.

KK-PB's first argument in its written objection reads as follows: "First, the expedited Sale process (structured as a private sale to LR) and abandonment of a public auction process (previously approved by this Court) is substantively and procedurally defective." KK-PB complains that the revised sale procedure approved by the Court resulted in the abandonment of the original auction process in favor of a private sale to a specific party and the elimination of competing bidders other than the original stalking horse bidder. Based on the evidence before the Court, including Mr. Glickstein's credible testimony, the final two bidders are in fact the only bidders reasonably identified by the Debtor and its professionals that were willing and able to consummate a sale near the presently proposed sale price and that are likely to comport themselves in a manner that does not result in further cost and delay to the estate and creditors. As the Court has already found today, in light of the circumstances of this case, the revised sale procedure in place now is an appropriate method for the Debtor to follow through on its extensive efforts to sell the hotel property for the best possible recovery and the ultimate benefit of the estate and valid creditors. The revised procedure is not in any way substantively defective or procedurally defective. The Court notes that EB-5 investors, who hold an overwhelming majority of the unsecured claims in this case, wholeheartedly supported the revised sale procedure and the proposed sale itself.

Today, more than two days after the objection deadline, with no prior notice to the Debtor or the Court, literally during the sale hearing, KK-PB attempts to present its own offer to purchase the Debtor's hotel property and related assets. KK-PB proposes a cash purchase price of $40.6 million, plus the assumed liabilities identified in the contract attached to the Debtor's sale motion, plus an additional $5 million dollars to cover the claim of the Town of Palm Beach presented in its previously filed proof of claim, but only to the extent that claim is allowed after an opportunity for objections. The reason for the extra $5 million is that KK-PB is not a qualified buyer under the settlement with the Town of Palm Beach, so that settlement would fail and the estate would not have the benefit of the significant settlement of those claims. Note that the Town of Palm Beach today suggests that if the settlement is not consummated, the Town likely will have other claims against the estate and those may include administrative expense claims that would come ahead of unsecured creditors. Thus, even assuming the basic terms of KK-PB's last minute proposal, it may not in fact represent the $1 million increase in value to the estate that it presents on its face. But let us assume for a moment that the KK-PB proposal represents a $1 million potential benefit to the estate. KK-PB's proposal includes as a required component that there be an auction procedure, set out about 30 days from now, at which other parties would also be permitted to bid. So the KK-PB proposal made today includes an initial topping offer, but would require a delay of at least a month for an additional auction procedure.

I should point out that the proposal of KK-PB was made orally during the hearing and was somewhat in flux as counsel for KK-PB presented the proposal. There was no written proposal offered. It is impossible to overstate how unusual this last minute proposal is in the context of a sale of this particular asset. Does it sometimes happen that bidders show up at a bankruptcy sale hearing to present a last minute bid? Yes, it does. Does it happen in cases such as this where the asset is of significant value and the due diligence required to present a reasoned bid typically requires extensive review of data and discussion with the debtor? In my 28 years experience with bankruptcy sales, it does not.

The KK-PB proposal is an untimely objection to the sale. The Court set an objection deadline. KK-PB filed an objection. This proposal was not included in the written objection. KK-PB's proposal is due to be overruled for this reason alone. But, even if KK-PB's proposal does not amount

to an untimely objection, the Debtor has exercised its reasonable business judgment in not pursuing KK-PB's proposal.

The Debtor opposes the KK-PB proposal. The EB-5 investors also oppose the KK-PB proposal. The Debtor offered the testimony of Mr. Glickstein to support the Debtor's view that, in the Debtor's reasonable business judgment, the KK-PB proposal does not in fact represent a more favorable offer to the estate than the one proposed in the sale motion. The Court credits all of Mr. Glickstein's testimony on this issue, which was thorough and credible. Among other things, Mr. Glickstein testified that the potential for about a $1 million increase in the overall sale price was not worth the risk that KK-PB, and its principal Mr. Glenn Straub, would take action that would greatly increase the costs to the estate. Mr. Glickstein pointed to specific experience with Mr. Straub in this very case to support Mr. Glickstein's view that the potential increase in recovery was far outweighed by the risk of additional litigation. Mr. Glickstein stressed the strength of the purchaser identified in the sale motion. Mr. Glickstein testified that a delay in the sale process would require the Debtor to attempt to obtain debtor in possession financing, as the Debtor has run out of funds, and that he believes he is unlikely to be able to find such financing. Based on the evidence before the Court, the Court finds that the Debtor has exercised its reasonable business judgment in determining not to pursue the proposal made by KK-PB at today's hearing.

The Debtor filed a motion to strike KK-PB's filed objection. The motion to strike is in the docket at ECF number 630 and was also set for hearing today. KK-PB filed a response at ECF number 632. Late last night, KK-PB filed a supplement to its response at ECF number 641. The motion to strike was withdrawn on the record today and the Debtor is directed to file a formal withdrawal. In spite of the withdrawal of that motion, it is appropriate for the Court to address KK-PB's standing to object to the proposed sale.

There are two potential sources of standing for KK-PB to object to the sale. The first is its claim represented by proof of claim number 70-3, which is the mortgage claim that the Court disallowed because the mortgage and the note it secures are both subject to avoidance. The second possible basis for KK-PB to have standing to object to the sale is that KK-PB has acquired a claim previously held by New Haven Contracting South, Inc., which was presented in proof of claim number 72-1 filed on behalf of New Haven. At the hearing today, KK-PB presented a fully executed copy of an agreement relating to the acquisition of that claim and testimony on behalf of both New Haven and KK-PB regarding the transaction.

KK-PB pointed only to section 1109 of the Bankruptcy Code as the basis for standing in this matter. Section 1109 provides a non-exclusive list of persons who have statutory standing to appear and be heard in chapter 11 cases. That list includes the term "creditor." "Creditor", in turn, is defined in section 101(10) as an entity with a claim against the debtor. And the term "claim" is defined to include any right to payment even if it is disputed. Based on these provisions, KK-PB argued that it has a claim, albeit disputed, based on the mortgage and note, is thus a creditor, and so has statutory standing under section 1109. This is not accurate. KK-PB's mortgage claim is not simply disputed. KK-PB's mortgage claim has been disallowed under section 502(c). As the Court pointed out in detail in the estimation ruling, citing law so well settled that it is set out as black letter law in the leading treatise on bankruptcy, the estimation of KK-PB's mortgage claim pursuant to section 502(c) was the final determination of the claim for purposes of this case. Indeed, the statutory provision itself states that estimation is for purposes of allowance. KK-PB has no right to payment in this case as a result of its mortgage claim, and so is not the holder of a claim in connection with its mortgage or note, is

6

not a creditor for those purposes, and thus has no statutory standing under section 1109 as a result of its mortgage claim.

KK-PB argued that because the Court used the phrase "estimated as an unsecured claim in the amount of $0" in the estimation ruling, that means KK-PB has an unsecured claim that entitles it to statutory standing under section 1109. This is a disingenuous argument and counsel for KK-PB well knows this. The Court used the word "unsecured" to summarize the ruling that KK-PB's mortgage was not enforceable and the Court used the term "$0" to indicate that KK-PB had no right to payment whatsoever. This is the same as disallowance of KK-PB's mortgage claim. Throughout the ruling the Court repeatedly referenced disallowance under section 502(c). Indeed, the Court specifically stated in the ruling that "KK-PB has neither a lien nor an allowed claim." It is no surprise to KK-PB that its mortgage claim has been disallowed in this case.

KK-PB does have standing under section 1109 as a result of the claim it acquired from New Haven. This means only that KK-PB had the right to file a timely objection.

I will now address the relevant provisions of the Bankruptcy Code and applicable law as they apply to the Debtor's sale motion and will address the objections raised by KK-PB that appear to relate to those provisions. I note that in KK-PB's written objection and also in court today, KK-PB did not raise any specific objection under any provision of section 363(f). Indeed, that provision is not even cited in the filed objection. Perhaps more importantly, in its written objection KK-PB raised no objection that it might have presented as a result of any secured claim it has acquired from New Haven, and so any such objection was waived.

The Debtor seeks an order approving the proposed sale free and clear of liens under section 363(b) and section 363(f). Section 363(f) provides that the Court may approve a sale free and clear of liens if any one of the subsections of section 363(f) is satisfied. In this case, there are three independent subsections of section 363(f) that would permit the proposed sale.

Under section 363(f)(3), the Debtor can sell an asset of the estate free and clear of an interest in property if the interest is a lien and the sale price is greater than the aggregate value of all liens. There are differing views as to the meaning of this provision. The Court is not aware of any binding case law in this Circuit. In the Court's view, the proper interpretation of this provision is that it requires a sale price greater than the amount of all valid debts secured by valid liens on the property to be sold. Stated another way, to take advantage of section 363(f)(3), the sale price must exceed the total of all claims that are secured by liens in the property, without taking into account a separate valuation of the property to be sold. Identify each claim that is secured by a lien. Add up the amount of all of those claims. The sale price must exceed that aggregate. In light of the Court's ruling that KK-PB does not have a valid mortgage on the hotel property, and the disallowance of the related claim, KK-PB does not have a lien on the property to be sold, or even a claim in this case, resulting from the mortgage and note. KK-PB has no right to object to the proposed sale under section 363(f)(3) as a result of its mortgage claim. Under the Court's prior ruling, the same analysis applies to Palm House Hotel, LLLP. Even if all other secured claims are taken into account, including the New Haven claim acquired by KK-PB, the total amount of claims potentially secured by liens on the property to be sold is much smaller than the proposed purchase price. Thus, the Debtor's motion can be granted pursuant to section 363(f)(3).

Under section 363(f)(4), the Court may approve a sale free and clear of liens and other interests, over the objection of a party claiming such a lien or interest, if the lien or interest is in bona fide dispute. The Debtor has the burden of showing that the lien of a party objecting to a sale free and clear is in bona fide dispute. Under applicable case law, the Court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the lien in question. The Court is not required to resolve the dispute before authorizing a sale, but only to identify that there is an objective basis for the dispute. In this case, the Court has already ruled, after a four and a half day estimation hearing, that KK-PB has no mortgage on the hotel and no claim in this case resulting from its mortgage and note. The Court's order to that effect remains in effect and enforceable. That ruling is preclusive here. But even if it could be argued that KK-PB's mortgage claim must be reconsidered in the context of this sale motion, which is not in any way supported in the law, there is at the very minimum a bona fide dispute with regard to the mortgage lien of KK-PB. Because any lien KK-PB may have as a result of acquiring the New Haven claim will attach to the proceeds of sale, KK-PB also does not have a right to object to sale under section 363(f)(4) on account of that claim. In any case, that objection was waived, as I noted earlier. Thus, the Debtor's motion can be granted pursuant to section 363(f)(4). This is an independent basis to grant the motion.

Finally, under section 363(f)(2), a debtor may sell property free and clear of any interest in the property if the holders of interests in the property consent. There is case law to support the Debtor's argument that the failure to object by the holder of a lien allegedly secured by property to be sold under section 363 is sufficient to constitute consent under this provision. There was ample due process here. While KK-PB filed a timely objection to the sale, in that filed objection KK-PB did not in any way suggest that it was objecting on account of its alleged secured claim that it acquired from New Haven. Indeed, the objection refers to KK-PB's claim in this case to be its mortgage claim that the Court has disallowed. As previously stated, any objection by KK-PB under section 363(f)(2) is not timely and was waived. Thus, the Debtor's motion can be granted pursuant to section 363(f)(2). This is yet another independent basis to grant the motion.

Section 363(e) requires the Court to condition any sale approved under section 363 by providing adequate protection to a party with a lien or other interest in the property to be sold. The most common form of such adequate protection is to provide that the party has a lien on the proceeds from the sale consistent with its pre-bankruptcy lien priority. KK-PB is not entitled to adequate protection in connection with its mortgage claim as, again, the Court has already ruled that KK-PB does not have a valid mortgage on the property. KK-PB will not have the benefit of any lien on the proceeds as a result of its now disallowed mortgage claim.

KK-PB's second argument in its written objection is aimed at the adequate protection question. It states: "Second, all proceeds of any Sale of the Assets should be held by the Debtor subject to further order of the Court, and any order approving the Sale should not contain the language above set forth in paragraph 22 of the Motion with respect to KK-PB Financial. Although the Court entered an order estimating KK-PB Financial's secured claim on the Assets at $0.00 pursuant to that certain order estimating claim dated February 26, 2019 (the "Estimation Order"), such Estimation Order is not final and remains subject to reconsideration and/or appeal pursuant to the applicable rules." In paragraph 22 of the sale motion the Debtor sought an order providing that liens will attach to the proceeds of sale in the order of their priority but specifically stating that KK-PB will not have a lien on the proceeds arising from its mortgage claim. As the Court has pointed out, in light of the disallowance of KK-PB's mortgage claim for all purposes in this case, and particularly for purposes of this sale, KK-PB is not entitled to any adequate protection of that alleged secured claim and so is

not entitled to a lien on the proceeds of sale. The fact that the Court's estimation order remains subject to a request for rehearing or appeal has no impact on this issue. Indeed, the Court notes that it is not uncommon for alleged secured claims to be estimated during a sale hearing for purposes of considering objections under section 363(f), and such estimations are then immediately relied on in connection with the proposed sale.

KK-PB argues that the language requested by the Debtor is an inappropriate inclusion of the estimation order in a proposed sale order. The Debtor has agreed not to include a specific reference to KK-PB in this context. Even so, this has no impact on the effect of the sale order as under the typical language that will be included in the sale order KK-PB would not be entitled to any interest in the sale proceeds on account of its mortgage claim.[2]

The sale procedure approved by the Court in the order entered at ECF number 619 has been implemented in good faith by the Debtor and the Debtor has obtained a final contract from LR U.S. Hotels Holdings, LLC at a cash purchase price of $39.6 million plus additional sums as stated in the contract.

The Debtor and LR have asked the Court to find that LR has acted in good faith in connection with the sale. This request is made in light of sections 363(m) and (n). The effect of a good faith finding consistent with these provisions is that an appeal from a sale order is moot if the appellant has failed to obtain a stay of the sale order. In order to preserve the sanctity of bankruptcy sales, such a finding is routinely requested. The Bankruptcy Code does not provide a definition of good faith for this purpose. Under the case law, it is generally held that good faith involves the integrity of the purchaser in the course of the sale proceedings. Typically, lack of good faith is shown by fraud, collusion between the purchaser and other bidders or the debtor, or an attempt to take grossly unfair advantage of other bidders.

In this case, LR offered the proposed testimony of its officer, Neil Teplica, which was accepted without objection. In addition, the Court admitted the affidavit of Mr. Glickstein, the manager of the Debtor, and Mr. Glickstein testified.

From the evidence before the Court, it is clear that LR and the Debtor have acted in good faith in all regards in connection with these sale proceedings. LR and the Debtor negotiated the sale contract at arm's length. LR has no prior connection with the Debtor, any previous owner of the hotel property, or any other bidder, except for a minor interaction with a prior minority owner in the debtor which is not significant in this case. There is not even a suggestion that LR has acted in collusion with the Debtor or other bidders or has in any way acted to the detriment of other potential bidders other than by making a business-like offer for the assets. The Court finds that all aspects of this proposed sale, including without limitation the negotiations undertaken by the Debtor and LR, the negotiation of the sale contract, and the activity before this Court, indicate that LR and the Debtor have acted in good faith in all regards. Because of the highly negotiated aspects of a sale such as this, it is customary for the Debtor to provide a proposed order that is in form acceptable to the winning bidder. The Debtor may include an appropriate finding of good faith in the proposed order to be submitted to the Court.

---

[2] This ruling is without prejudice to KK-PB requesting a lien on the proceeds of sale as a result of any reversal or modification of the Court's estimation order on appeal, if any.

Bankruptcy Rule 6004(h) provides that an order approving a sale such as this will be stayed automatically for 14 days unless the Court orders otherwise. The Debtor requests that this automatic stay not apply to the present sale order and that the order become enforceable immediately upon entry. In light of the settlement with the Town of Palm Beach, any purchaser of the Debtor's hotel property must immediately undertake action to fulfill the requirements of the Town so as to retain certain development rights, among other things. There is significant time pressure in this regard. In addition, the Debtor has insufficient funds on hand to continue maintaining, securing, and insuring the property to be sold. In light of these facts, there is sufficient cause for the Court to waive the automatic stay of the sale order under rule 6004(h). The Court will grant the Debtor's request and the sale order will be effective immediately upon entry.

The sale proposed by the Debtor to LR U.S. Hotels Holdings LLC is approved and the remainder of the relief requested in the motion filed at ECF number 604 is granted. The Debtor may submit a proposed order approving the sale. The proposed order should include a specific statement incorporating the findings of fact and conclusions of law made on the record today.

* * *