CASE NO. 19-80351-CIV-ROSENBERG

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

KK-PB FINANCIAL, LLC,

*Appellant*,

vs.

160 ROYAL PALM, LLC,

*Appellee*.

On Appeal from the United States Bankruptcy Court
for the Southern District of Florida, Case No. 18-19441-EPK

**KK-PB FINANCIAL, LLC'S INITIAL BRIEF**

WHITE & CASE LLP
John K. Cunningham
James N. Robinson
David P. Draigh
200 South Biscayne Boulevard
Suite 4900
Miami, FL 33131
(305) 371-2700

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Bankr. P. 8012, Appellant, through its undersigned counsel, certifies that it has no parent company, that no publicly held company owns 10% or more of Appellant's stock, and that no publicly traded company or corporation has an interest in the outcome of this appeal.

Respectfully submitted,

s/ *James N. Robinson*
James N. Robinson
Attorney for Appellant

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..................................................................C-1

TABLE OF CONTENTS..................................................................................................... i

TABLE OF CITATIONS ...................................................................................................ii

JURISDICTIONAL STATEMENT ................................................................................... 1

STATEMENT OF THE ISSUES PRESENTED & STANDARDS OF REVIEW ................................. 2

STATEMENT OF THE CASE AND FACTS..................................................................... 3

SUMMARY OF THE ARGUMENT ................................................................................. 8

ARGUMENT..................................................................................................................... 11

I.      The Bankruptcy Court Erred by Ruling that KK-PB Does Not Have Standing to Object to the
         Proposed Sale of the Hotel to LR ................................................................................ 11

II.     The Bankruptcy Court Abused Its Discretion by Withdrawing the Bid Procedures and
         Cancelling the Public Auction .................................................................................... 14

III.    The Bankruptcy Court Abused Its Discretion by Eliminating Other Potential Bidders ........... 15

IV.     The Bankruptcy Court Abused Its Discretion in Approving the Sale to LR. ......................... 17

CONCLUSION................................................................................................................ 20

CERTIFICATE OF COMPLIANCE ............................................................................... 21

CERTIFICATE OF SERVICE ........................................................................................ 23

## TABLE OF CITATIONS

**Page(s)**

### CASES

ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.,
557 F.3d 1177 (11th Cir. 2009) ......................................................................2

Areal Plus Grp. v. Fisher Island Invs., Inc.,
No. 1:14-cv-20310-KMM, 2014 U.S. Dist. LEXIS 189856 (S.D. Fla. Sep. 30,
2014) ...............................................................................................................2

Corp. Assets, Inc. v. Paloian,
368 F.3d 761 (7th Cir. 2004) ..........................................................................2

In re Adelphia Communs. Corp.,
359 B.R. 65 (Bankr. S.D.N.Y. 2007)............................................................17

In re Atlanta Packaging Prod., Inc.,
99 B.R. 124 (Bankr. N.D. Ga. 1988) .............................................................16

In re Broadmoor Place Invs., L.P.,
994 F.2d 744 (10th Cir. 1993) .......................................................................15

In re Diplomat Constr., Inc.,
481 B.R. 215 (Bankr. N.D. Ga. 2012) ...........................................................16

In re Fairfield Sentry Ltd.,
539 B.R. 658 (Bankr. S.D.N.Y. 2015)...........................................................11

In re Financial News Network, Inc.,
980 F.2d 165 (2d Cir. 1992)...........................................................................15

In re Gulf States Steel,
285 B.R. 739 (Bankr. N.D. Ala. 2002) .....................................................11, 18

In re Integrated Res.,
135 B.R. 746 (Bankr. S.D.N.Y. 1992).............................................................8

In re Lionel Corp.,
722 F.2d 1063 (2d Cir. 1983).........................................................................13

In re MF Glob. Inc.,
467 B.R. 726 (Bankr. S.D.N.Y. 2012)...........................................................16

In re Mr. Grocer, Inc.,
   77 B.R. 349 (Bankr. D.N.H. 1987) ................................................................. 17

In re N. Am. Techs. Group, Inc.,
   No. 10-20071, 2010 Bankr. LEXIS 5834 (Bankr. E.D. Tex. Aug. 16, 2010) ......... 16

In re The Ohio Corrugating Co.,
   59 B.R. 11 (Bankr. N.D. Ohio 1985) ................................................................. 16

In re Summit Corp.,
   891 F.2d 1 (1st Cir. 1989) ................................................................................ 17

In re Tom's Foods, Inc.,
   No. 05-40683-RFH, 2005 Bankr. LEXIS 2062 (Bankr. M.D. Ga. Sept. 23,
   2005) ............................................................................................................. 16

Licensing by Paolo v. Sinatra (In re Gucci),
   126 F.3d 380 (2d Cir. 1997) ............................................................................ 11

McMahon v. Presidential Airways, Inc.,
   502 F.3d 1331 (11th Cir. 2007) ......................................................................... 1

Moecker v. Greenspoon, Marder, Hirschfeld, Rafkin, Ross, Berger & Abrams (In
   re Lentek Int'l, Inc.),
   346 F. App'x 430 (11th Cir. 2009) ..................................................................... 2

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.
   Anderson,
   390 U.S. 414 (1968) ....................................................................................... 13

Smith v. Atl. S. Bank (In re Smith),
   522 F. App'x 760 (11th Cir. 2013) ...................................................................... 2

Stark v. Moran (In re Moran),
   566 F.3d 676 (6th Cir. 2009) ........................................................................... 11

TransUnion Risk & Alt. Data Sols., Inc. v. Best One, Inc. (In re TLFO, LLC),
   572 B.R. 391 (Bankr. S.D. Fla. 2016) ................................................................. 1

Vick v. Vick (In re Vick),
   233 F. App'x 897 (11th Cir. 2007) .................................................................... 12

## STATUTES AND OTHER AUTHORITY

28 U.S.C. § 157(a) ................................................................................................ 1

28 U.S.C. § 158(a)(1) ............................................................................................ 1

11 U.S.C. § 363(b)(1) .......................................................................................... 16

11 U.S.C. § 363(m) ................................................................................................7

11 U.S.C. § 1109 ..................................................................................................11

28 U.S.C. § 1334 ....................................................................................................1

## OTHER AUTHORITIES

Fed. R. Bankr. P. 2002(a)(2) ...............................................................................13

Fed. R. Bankr. P. 6004(h) ......................................................................................7

## JURISDICTIONAL STATEMENT[1]

The bankruptcy court had subject matter jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334.  This Court has appellate jurisdiction under 28 U.S.C. §§ 1334 and 158(a)(1).

The United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered the *Order: (I) Granting Expedited Motion Seeking Approval of Procedures for Amended Sale Process and (II) Scheduling Final Hearing to Consider Approval of Sale of Assets Free and Clear of Liens, Claims and Encumbrances* [Bankr. D.E. 619] (the "Private Sale Procedures Order") on March 1, 2019, (A0340), and the notice of appeal was filed on March 11, 2019, (A0353).  The Bankruptcy Court entered the *Order Approving Sale of Assets to LR U.S. Hotels Holdings, LLC Free and Clear of All Liens, Claims, and Encumbrances* [Bankr. D.E. 651] (the "Sale Order") on March 12, 2019, (A0395), and the notice of appeal was filed on March 12, 2019, (A0419).  The Bankruptcy Court entered the *Order Denying Motion to Stay Orders Pending Appeal* [Bankr. D.E. 668] (the "Deny Stay Order") on March 14, 2019, (A0476), and the notice of appeal was filed on March 14, 2019, (A0657) (the Private Sale Procedures Order, the Sale Order, and the Deny Stay Order, together, the "Orders").[2]

The Orders are final orders.  See, e.g., McMahon v. Presidential Airways, Inc., 502 F.3d 1331, 1338 (11th Cir. 2007) (stating an order is final and appealable when it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment"); TransUnion Risk & Alt. Data Sols., Inc. v. Best One, Inc. (In re TLFO, LLC), 572 B.R. 391, 429 (Bankr. S.D.

---

[1] "(A####)" refers to the page of the Appendix to KK-PB Financial, LLC's Initial Brief.

[2] As undersigned counsel advised the Debtor's counsel, the Appellant does not raise any issues with respect to the denial of the emergency stay.  Appellant only challenges the additional findings that the Bankruptcy Court made in the Deny Stay Order as such findings relate to the Sale Order.

Fla. 2016) ("An order from a bankruptcy court approving the sale of assets represents a final appealable judicial order . . . .").

**STATEMENT OF THE ISSUES PRESENTED & STANDARDS OF REVIEW**

I.      Whether the Bankruptcy Court erred by ruling that KK-PB Financial, LLC has no standing to object to the proposed sale to LR U.S. Hotels Holdings, LLC, which is reviewed *de novo*.  See Smith v. Atl. S. Bank (In re Smith), 522 F. App'x 760, 764 (11th Cir. 2013).

II.     Whether the Bankruptcy Court abused its discretion by withdrawing the bid procedures, cancelling the public auction, setting entirely new private sale procedures, and scheduling a final hearing on the private sale, and whether adequate notice had been provided for the foregoing.  See Corp. Assets, Inc. v. Paloian, 368 F.3d 761, 773 (7th Cir. 2004); Areal Plus Grp. v. Fisher Island Invs., Inc., No. 1:14-cv-20310-KMM, 2014 U.S. Dist. LEXIS 189856, at *14-15 (S.D. Fla. Sep. 30, 2014).

III.    Whether the Bankruptcy Court abused its discretion by failing to re-open bidding and eliminating other potential bidders even after KK-PB Financial, LLC presented a higher and better cash offer for the Debtor's assets at the final sale hearing.  See Corp. Assets, Inc. v. Paloian, 368 F.3d 761, 773 (7th Cir. 2004).

IV.     Whether the Bankruptcy Court abused its discretion by approving the sale to LR U.S. Hotels Holdings, LLC after allowing the Debtor to exclude KK-PB Financial, LLC and the public from bidding, even after it heard evidence that there were potential higher and better bids and by ruling that the Debtor properly exercised its business judgment in selecting LR U.S. Hotels Holdings, LLC's offer as the highest and best offer.  See Corp. Assets, Inc. v. Paloian, 368 F.3d 761, 773 (7th Cir. 2004).

Factual findings in support of these rulings are reviewed for clear error.  See ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd., 557 F.3d 1177, 1195 (11th Cir. 2009); Moecker v. Greenspoon,

2

Marder, Hirschfeld, Rafkin, Ross, Berger & Abrams (In re Lentek Int'l, Inc.), 346 F. App'x 430, 432-33 (11th Cir. 2009).

## STATEMENT OF THE CASE AND FACTS

The relevant facts are not disputed.  Appellee, 160 Royal Palm LLC ("Debtor"), owns the Palm House Hotel (the "Hotel") in Palm Beach, Florida—a half-completed, non-operational property.  (A0071 ¶ 2).  Appellant KK-PB Financial, LLC ("KK-PB"), a creditor of the Debtor, is owned and controlled by its sole manager, Palm Beach County developer Glenn Straub ("Mr. Straub"), who is a former owner of the Hotel.  (A0479).  Debtor filed its chapter 11 case with the Bankruptcy Court on August 2, 2018, and then pursued a sale of substantially all of its assets (the "Assets") to a third party, RREF II Palm House LLC ("RREF"), for $32 million plus assumed liabilities.  (A0001; A0071).

On October 16, 2018, the Bankruptcy Court approved formal bid procedures for a public auction process, (A0203, *amended by* A0216, A0231, A0235, *and* A0237) (as amended, the "Bid Procedures") for the sale of the Assets to RREF, as the stalking horse bidder, whose bid included the settlement of  fines issued by the Town of Palm Beach and Enforcement Board against the Debtor (the "Palm Beach Claims").  (A0209 ¶ 9; A0120 § 11.5).  After several extensions, the Bid Procedures provided for (i) a deadline of March 4, 2019 (the "Bid Deadline") for the submission of all bids for the Assets, and (ii) a public auction of the Assets on March 8, 2019 (the "Public Auction").  (A0237-38 ¶¶ 2-3).

However, on February 26, 2019, one week before the March 4 Bid Deadline, the Debtor filed an expedited motion (the "Private Sale Motion") seeking approval of an expedited, closed private sale of the Assets (the "Closed Private Sale"), within 10 days, to a previously undisclosed buyer, LR U.S. Hotels Holdings, LLC, for $39.6 million plus assumed liabilities (the "LR Bid").  (A0242-43 ¶ 7; A0248 ¶ 24).  Indeed, the asset purchase agreement between the Debtor and LR

(the "LR APA") *required* the Debtor to withdraw the Bid Procedures within two days and allowed only one bidder to compete—RREF, the previous stalking horse bidder under the Bid Procedures. (A0271 § 8.1; A0272 § 8.2).  Notwithstanding that the existing March 4 Bid Deadline for all bidders under the court-approved Bid Procedures had not yet expired, no other bidders would be allowed.  (Compare A0242 ¶ 7, A0243 ¶ 9, with A0238 ¶ 3).

Just two days after the Private Sale Motion was filed, the Bankruptcy Court held an interim hearing on February 28, 2019 (the "February 28 Hearing").  With the Bid Deadline for all bidders just five days away, KK-PB objected to the abandonment of the court-approved, publicly announced Bid Procedures and Public Auction process.  (A0708:5-13).  When the Bankruptcy Court asked the Debtor's counsel if "there's no other party that has been expressing interest or no other party expressing interest in that price,"  (A0695:5-7), the Debtor stated that KK-PB's principal, Mr. Straub, wanted the opportunity to top the LR Bid,  (A0695:12-14).  Indeed, KK-PB informed the Bankruptcy Court that "[w]hat we would say is deny the private sale component and *allow us the opportunity to actually participate*.  We're stating for the record that we would top, as required, *we would present a higher and better offer than what's currently on the table*." (A0707:15-19 (emphasis added)).

Nevertheless, the Bankruptcy Court rejected KK-PB's arguments and, on March 1, 2019, entered the Private Sale Procedures Order, which approved the Debtor's proposed expedited procedures (the "Private Sale Procedures") and (i) withdrew the Bid Procedures (including the previously announced Bid Deadline of March 4 for all bidders), (ii) cancelled the Public Auction set for March 8, (iii) set March 4 as the bid deadline for *only* RREF to submit a competing bid, (iv) set a March 5 deadline for objections to the Private Sale Motion, and (v) set a final hearing on March 8 (the "Sale Hearing").  (A0341 ¶¶ 2, 3; A0342 ¶ 5, 8; A0343 ¶ 9).  On March 5, 2019, KK-

PB timely objected to the Private Sale Motion (the "Sale Objection"), arguing, among other things, that the abandonment of the Public Auction and adoption of the expedited Private Sale Procedures was substantively and procedurally defective.  (A0346; A0350).

KK-PB appeared at the Sale Hearing, objected to the Closed Private Sale, and made a higher and better cash offer (the "Initial KK-PB Offer") for the Assets superior to the LR Bid, including (1) $40.6 million cash, (2) assumption of the Assumed Liabilities (as defined in the LR APA), (3) indemnification of the Debtor for the Palm Beach Claims, (4) a public auction to be held within one month, at which KK-PB's affiliate would be the stalking horse bidder but would not receive any stalking horse protections, such as a break-up fee, (5) a cash deposit of 10% of the sale price deposited with the Debtor, and (6) reimbursement of the Debtor for up to $20,000.00 for advertisement of the auction.  (A0513:23–A0516:6).  Moreover, KK-PB agreed to honor the material terms of the LR APA (other than the Closed Private Sale it contemplated).  (A0514:3-5; A0585:16-24).

Most importantly, KK-PB presented to the Bankruptcy Court (and admitted into evidence) a $50 million cashier's check from Bank of America made out to KK-PB's principal, Mr. Straub, showing KK-PB's ability to close.  (A0749).

At the hearing, the Bankruptcy Court stated that it did not consider the indemnification of the Palm Beach Claim to be a cash payment.  (A0514:17–A0515:21).  After the Town of Palm Beach estimated the Palm Beach Claim to be $4.6 million (with some uncertainty whether any postpetition claims would accrue), KK-PB increased its offer by nearly $5 million to $45.2 million to cover the Palm Beach Claim, (A0582:5-13), even though the Town of Palm Beach had been willing to settle that claim with LR for $250,000.00, (A0168-70 ¶ 19; A0248 ¶ 25).  KK-PB also stated its willingness to *deposit* the entire purchase price with the Debtor to satisfy the Bankruptcy

Court's demand for "cash on the barrelhead." (A0583:12–A0584:23; A0615:18-21). The final offer from KK-PB (the "KK-PB Offer") was fully reflected on the record at the Sale Hearing. (A0581:12–A0586:23). In short, the KK-PB Offer would have netted the Debtor's estate *$1 million more, in cash, than the LR Bid* on the same terms and conditions as the LR APA (without any stalking horse protections, including break-up fees, and right of first refusal). And the KK-PB Offer was binding as the KK-PB Offer was made on the record before the Bankruptcy Court. Nevertheless, the Debtor flatly rejected the KK-PB Offer, and had no interest in negotiating a higher and better cash offer from KK-PB. (A0589:14-16).

The Debtor's manager, Mr. Cary Glickstein, who has never served as the manager of a debtor in possession, (A0594:18-20), testified about the Debtor's basis for selecting the LR Bid, but he did not identify any sound business reason for rejecting the KK-PB Offer. Rather, he testified that Mr. Straub "has mentioned . . . to me on several occasions" that "they take pleasure in suing people, and that they pride themselves on being a professional litigator," (A0598:9-15), indicating that he had rejected the offer because of his and the Debtor's animosity towards Mr. Straub. But Mr. Glickstein, despite assuming that Mr. Straub would sue the estate, conceded that Mr. Straub *has not sued* the Debtor. (A0613:9-12, 20). Although Mr. Glickstein testified that the Debtor's estate may not have sufficient funds to operate for the month-long auction proposed by the KK-PB Offer, (A0593:25–A0594:4), he did not make a good faith attempt to resolve that issue by seeking one month of debtor-in-possession financing from KK-PB.

The Bankruptcy Court approved the sale to LR in an oral ruling the same day.[3] (A0650:19-22). It refused to interfere with the Debtor's business judgment—hamstrung by LR to reject KK-

---

[3] The Bankruptcy Court notes that the "majority of creditors" of the Debtor approved the Closed Private Sale to LR, but the record below on creditor support is suspect at best. The only "creditors" offering statements in support of the sale at the Sale Hearing were the Town of Palm Beach and an attorney representing EB-5 foreign investors who invested in Palm House Hotel, LLLP, a

PB's higher and better cash offer—and rubber-stamped the Debtor's election of the LR Bid as the highest and best.  This process, from KK-PB learning of the LR Bid to the Bankruptcy Court's approval of that offer, (i) took *only 10 days*, (ii) abandoned the previously announced Bid Deadline and Public Auction, and (iii) forfeited potentially $1 million of additional cash recovery for the estate.

On March 12, 2019, the Bankruptcy Court entered the Sale Order, which expressly waived the 14-day stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  (A0395; A0407 ¶ 24).  KK-PB immediately appealed the Private Sale Procedures Order and the Sale Order to this Court.  (A0381; A0419).  On March 11, 2019, KK-PB sought an emergency stay pending appeal from the Bankruptcy Court.  (A0362).  The Bankruptcy Court set the Debtor's response deadline for March 14, 2018.  (A0447).  Out of concern that the Debtor would rush to close the sale to LR—which would statutorily moot KK-PB's appeal under section 363(m) of title 11 of the United States Code (the "Bankruptcy Code")— KK-PB also sought an emergency stay pending appeal from this Court.  (A0450; Dist. D.E. 6).

On March 14, 2019, the Bankruptcy Court entered the Deny Stay Order (A0476), and on the same day this Court denied KK-PB's motion for stay, (Dist. D.E. 13).  KK-PB's request for emergency stay protection was also denied by the United States Court of Appeals for the Eleventh Circuit.  In the Deny Stay Order, the Bankruptcy Court expanded on the Sale Order and made

---

Florida limited liability limited partnership, who allegedly made loans for the benefit of the Debtor.  First, the Town of Palm Beach had already been paid its $250,000 settlement amount as part of the Private Sale Procedures Order and had no economic interest in competing bids.  Second, the EB-5's are not even creditors of the Debtor but rather putative equity interest holders in Palm House Hotel, LLLP alleged to have loaned money for benefit of the Debtor.  Third, no creditors committee representing actual unsecured creditors of the Debtor was formed in the Chapter 11 case to provide the opinion of unsecured creditors at the sale hearing.

additional findings—erroneous, as we show below—with respect to the sale to LR and the KK-PB Offer.

## <u>SUMMARY OF THE ARGUMENT</u>

> When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold. In general, to receive approval of a proposed sale of assets, the debtor will need to demonstrate to the bankruptcy court that the proffered purchase price is the highest and best offer.

<u>In re Integrated Res.</u>, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) (citation omitted).

In the more than 40 years since the enactment of the Bankruptcy Code, this appeal presents one of the most extreme cases where the above-cited bedrock principle to maximize value of a debtor's assets sold in a bankruptcy sale was completely abandoned by the Debtor and disregarded by the Bankruptcy Court.  Indeed, few if any reported bankruptcy sale decisions come close to the facts presented here (which took place in a span of *just ten days*).

At the request of the Debtor, the Bankruptcy Court scheduled *the Bid Deadline for March 4, 2019 for all bidders to bid on the Assets*.  In furtherance of the Bid Deadline, the Bankruptcy Court scheduled the Public Auction for the sale of the Debtor's Assets to be held on March 8, 2019.

The Debtors were well on the road towards determining whether (and to what extent) there were other potential bidders for the Debtor's Assets—having sought and obtained court approval of the Bid Deadline and Public Auction as part of the Bid Procedures.  Indeed, other than RREF, the Debtor did not "pre-qualify" prospective bidders under the Bid Procedures, but rather left the determination of "qualified bids" until after evaluating all bids received by the Bid Deadline of March 4, 2019.

Unfortunately, the Bid Deadline and subsequent determination of "qualified bids" never saw the light of day. The entire landscape of the chapter 11 case and any attendant sale of the Assets changed dramatically when the Debtor abandoned the court-approved public sale process in favor of the Closed Private Sale to LR less than a week before the Bid Deadline.

The Debtor instead moved to sell the Assets on an expedited basis to LR in the Closed Private Sale pursuant to the LR APA. On just two days' notice, on February 28, 2018, the Bankruptcy Court held a hearing, at which KK-PB appeared and objected to the Closed Private Sale on grounds that it would submit a higher and better cash offer for the Assets. But the Bankruptcy Court overruled the objection and entered the Private Sale Procedures Order, which approved (i) the LR APA on an interim basis, (ii) the Debtor's withdrawal of the previously scheduled Bid Deadline for all bidders, and (iii) the cancellation of the Public Auction. Most importantly, the Private Sale Procedures Order expressly ***limited bidding on the Assets to just two bidders*** (LR and the prior stalking horse, RREF) and retained LR's contractual right of first refusal (the "<u>Right of First Refusal</u>"), from the LR APA, which allowed LR to outbid any topping bid submitted by RREF. Put bluntly, it was game over for any other bidder interested in submitting competitive offers for the Debtor's Assets.

Although the Private Sale Procedures Order set an objection deadline for March 5, 2019 and scheduled the final Sale Hearing on the Closed Private Sale for March 8, 2019, there was no deadline for the submission of bids by other bidders. Indeed, only LR and RREF were given rights to bid, albeit sharply limited, as part of the expedited Closed Private Sale.

KK-PB timely filed its objection to the Closed Private Sale and, at the Sale Hearing, presented the Initial KK-PB Offer, a firm cash offer to buy the Assets for $1 million ***more*** than the LR Bid. KK-PB supported its Initial KK-PB Offer with a cashier's check issued by Bank of

America in the amount of $50 million in favor of KK-PB's principal, Mr. Straub (the former owner of the Debtor and its Assets).

After initially dismissing the Initial KK-PB Offer as an untimely filed objection to the Closed Private Sale, the Bankruptcy Court engaged with KK-PB's counsel at the Sale Hearing, leading to clarifications of and improvements to the Initial KK-PB Offer to make sure there was— as the Bankruptcy Court described it "cash on the barrelhead." The final terms of the KK-PB Offer were fully reflected on the record at the Sale Hearing.

Because it was contractually bound by the LR APA to support the Closed Private Sale— which only allowed LR or RREF to buy the Assets—the Debtor never proposed any terms that it would even consider from KK-PB, notwithstanding the $50 million cashier's check in favor of Mr. Straub, KK-PB's principal, that was put into evidence at the Sale Hearing. At the conclusion of the Sale Hearing and consistent with its Private Sale Procedures Order, the Court overruled KK-PB's objection, rejected the KK-PB Offer, and approved the Closed Private Sale of the Assets to LR.

In short, the Debtor abdicated its fiduciary duty to maximize the value of the Debtor's Assets by pulling the rug out from a court-approved competitive sale process and simply handing over those Assets (and the process to sell them) to LR. But there was no emergency to justify such a race to sell the Debtor's principal Asset—a partially constructed, non-operational hotel property—on virtually no notice to parties in interest. There was no dire emergency or threatened loss of jobs that would have required an immediate Closed Private Sale to LR without the sale protections contained in the Bid Procedures approved by the Bankruptcy Court.

In the end, the Debtor did not properly exercise its business judgment when it acceded to the demands of LR to eliminate competitive bids on the eve of a court-ordered Bid Deadline and

competitive Public Auction process.  KK-PB understands and appreciates that the Debtor is a special purpose entity and has been trying to sell its Assets for several months.  These facts alone, however, neither necessitate nor justify a closed sale process that expressly blocked the participation of other potential bidders.  The Bankruptcy Court itself must maintain the fairness of any sale of substantially all of the Debtor's assets on an expedited basis, rather than merely rubber-stamp the Debtor's decision.

Based on the record below, a private sale eliminating any and all competing bids from other bidders such as KK-PB was wholly inappropriate and should not have been approved by the Bankruptcy Court.  Without the transparency of an open and fair sale process—with a properly noticed bid deadline for all bidders and a public auction if multiple competing bids are submitted—the Closed Private Sale subverted the long-standing bankruptcy principle of maximizing value of the debtor's assets for the benefit of the estate.  The Bankruptcy Court's failure to do so was a clear abuse of discretion.  Accordingly, the Orders should be reversed.

## <u>ARGUMENT</u>

### I.   The Bankruptcy Court Erred by Ruling that KK-PB Does Not Have Standing to Object to the Proposed Sale of the Hotel to LR

The Bankruptcy Court ruled that KK-PB is merely an aggrieved bidder with "no cognizable financial interest in the appeal" and therefore has no standing.  (A0480; A0497).  That was error. KK-PB is a creditor with standing under section 1109 of the Bankruptcy Code.  Section 1109(b) of the Bankruptcy Code expressly provides: "A party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under the [Bankruptcy Code]."  11 U.S.C. § 1109(b).   In addition to its disputed Claim No. 70-3 (the "<u>Mortgage Claim</u>"), KK-PB acquired the secured claim of New Haven Contracting South, Inc. (as recognized by the Bankruptcy Court in the Sale Order) (the "<u>New Haven Claim</u>"), and is a creditor under such claim.  (A0414; A0415;

A0500).   The Debtor had moved to strike the Sale Objection on the ground that KK-PB lacked standing to object to the sale.  (A0758).   The Bankruptcy Court ruled that "KK-PB does have standing under section 1109 as a result of the clam it acquired from New Haven [Contracting South Inc.]."  (A0415).  At the Sale Hearing, the Debtor conceded that KK-PB has standing and, at the Bankruptcy Court's invitation, agreed to withdraw the motion to strike. (A0566:19-A0568:20; A0761).  In the Deny Stay Order, the Bankruptcy Court again reiterated:

> **KK-PB is a creditor** in this case as a result of its acquisition of a claim originally filed by New Haven Contracting South, Inc., which is in the claims register at 72-1. . . . *As the Court addressed more fully in the Sale Order, KK-PB had standing to interpose an objection to the sale as a result of this claim*

(A0478-79 (emphasis added)).

Indeed, "[w]here the disappointed bidder is also a creditor, who has standing to object to the sale independent of its role as a bidder, participating in the auction does not waive the bidder-creditor's right to object to the sale."  3 Collier on Bankruptcy, ¶ 363.02[1][c] (16th ed. 2019) (citing In re Fairfield Sentry Ltd., 539 B.R. 658 (Bankr. S.D.N.Y. 2015) (finding that a creditor's participation in the auction did not waive the bidder-creditor's right to object to the sale)); In re Gulf States Steel, 285 B.R. 739, 743 (Bankr. N.D. Ala. 2002) (indicating that a party may object to a sale if the party can show "any possibility . . . any of the sales proceeds would go to their benefit.").  KK-PB also has standing as a marginalized bidder because, as shown below, it is "challenging the intrinsic fairness of the sale."  See Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 388 (2d Cir. 1997); see also Stark v. Moran (In re Moran), 566 F.3d 676, 681-82 (6th Cir. 2009) (noting that an unsuccessful bidder has standing to appeal a sale order when it "challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness.") (internal citations and quotations omitted)).

Moreover, KK-PB **does** have standing to appeal the Bankruptcy Court's orders under the "person-aggrieved" doctrine, because it has "a direct and substantial interest in the question being appealed."  See Vick v. Vick (In re Vick), 233 F. App'x 897, 899 (11th Cir. 2007).  As a creditor whose recoveries are directly impacted by the disposition of estate property, KK-PB is "directly and adversely affected pecuniarily by the [Orders]" and unquestionably has "a financial stake" in the Orders.  See id.  As the Bankruptcy Court noted, the Debtor has indicated that it intends to object to KK-PB's New Haven Claim.  (A0479).  If that challenge is successful and KK-PB becomes not entitled to full payment from the sale proceeds (e.g., becomes an unsecured creditor), then its recovery would be directly affected by the Closed Private Sale approved by the Orders.  Thus, KK-PB has standing as it may be "directly and adversely affected pecuniarily by the [Orders]" and unquestionably has "a financial stake" in the Orders if the Debtor proceeds it has stated it will.

Finally, KK-PB **did** timely object to the sale, because KK-PB objected to the Private Sale Motion on March 5, 2019.  (See A0346; A0350).  The Bankruptcy Court's finding, (A0400–401 ¶ Q), that the Sale Objection was directed to the Mortgage Claim is not supported by the record. Indeed, KK-PB's Sale Objection did not state that KK-PB—which also holds the New Haven Claim—was objecting solely as the holder of the Mortgage Claim.  (See A0346; A0350).  The Bankruptcy Court had no basis to construe the Sale Objection as made only on behalf of the Mortgage Claim, particularly because KK-PB reserved all rights to be heard in connection with any hearing on the Private Sale Motion and the Closed Private Sale.  (A0348 ¶ 7).  Thus, it was error to rule that KK-PB did not have standing to prosecute its Sale Objection.

## II.    The Bankruptcy Court Abused Its Discretion by Withdrawing the Bid Procedures and Cancelling the Public Auction

The Bankruptcy Court's Private Sale Procedures Order allowed the Debtor to *rush a new Closed Private Sale of the Assets through the Bankruptcy Court in merely 10 days*.  That was an abuse of discretion.  Indeed, the March 1, 2019 Private Sale Procedures Order *withdrew* the Bid Procedures Motion, *cancelled* the auction, set a March 5, 2019 deadline for objecting to the Sale, and set the Sale Hearing for March 8, 2019.  (A0341 ¶¶ 2-3; A0342 ¶ 8; A0343 ¶ 9).  And the Bankruptcy Court was simply wrong to find that the Private Sale Procedures was a mere continuation of the withdrawn public bid process.  (A0409; A0412; A0482; A0492).

"As the Supreme Court has noted, it is easy to sympathize with the desire of a bankruptcy court to expedite bankruptcy reorganization proceedings for they are frequently protracted. 'The need for expedition, however, is not a justification for abandoning proper standards.'"  See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 450 (1968)).  That admonition from the Supreme Court underscores the issue here, where, the parties in interest received only two days' notice of the hearing on the Private Sale Procedures and only eight days' notice of the Sale Hearing.  (A0339; A0344).  Notwithstanding the Bankruptcy Court's statement in the Sale Order that adequate notice was given, such notice was far less than the 21 days' notice required under Bankruptcy Rule 2002(a)(2) and was grossly inadequate.

Thus, the Private Sale Procedures Order cancelled the Bid Procedures prematurely, precluding a competitive auction that would have maximized the value of the Hotel for the estate. Under the original Bid Procedures, the Public Auction would have been on March 8, 2019, with no *pre*-qualification required to submit a bid by the March 4 Bid Deadline.  (See A0218-19 ¶ 6; A0237-38).  At the February 28 Hearing, KK-PB objected to the cancellation of the Public Auction

process and stated its intention of submitting a topping bid for the Hotel, (A0707:15-19), and KK-PB could have, among other things, exercised its right under the Bid Procedures to submit a bid by the March 4 Bid Deadline. (See A0705:9–A0706:18).  Indeed, KK-PB—and likely other potential bidders—had depended on the Bankruptcy Court's order setting the Bid Deadline for March 4, which was *still four days away*, but the Private Sale Procedures Order, as KK-PB stated at the hearing, would "pull the rug out from under [it] at the last minute." (See A0705:9-16).  The Bankruptcy Court abused its discretion by sweeping away the established Bid Procedures and rubber-stamping the Debtor's request to hold the Closed Private Sale in their place.

### III.    The Bankruptcy Court Abused Its Discretion by Eliminating Other Potential Bidders

When KK-PB attempted to present its offer at the March 8 Sale Hearing, it was clear that the Private Sale Procedures's exclusion of KK-PB from bidding on the Assets was a detriment to the estate.  The Bankruptcy Court derided the KK-PB Offer as being last minute and previously undisclosed, complaining that "you're showing up at the very last moment.  This isn't the 11th hour, this is 12:01 a.m., and now there is a cash proposal." (A0517:13–16).  The Bankruptcy Court also wrongly stated that the "[Private Sale Procedure] was approved last week [at the February 28 hearing], and nobody stood up on behalf of KK-PB and said we don't like this procedure because we're going to propose a cash bid," (A0517:22-25), even though KK-PB *did stand up and do precisely that* at the February 28 hearing, (A0705:9-16).  Belying its complaints about KK-PB's timeliness, the Bankruptcy Court saw no problem in entertaining LR's offer—which came out of left field only 10 days earlier and which the Bankruptcy Court admitted was "a proposal now apparently resulting from negotiation between . . . the [D]ebtor and *a completely new bidder.*" (A0710:22-25 (emphasis added)).  In short, the Bankruptcy Court should have re-opened the

bidding to prevent the Debtor from ignoring its fiduciary duty to maximize value for the benefit of all its stakeholders.

"[A] Bankruptcy Court . . . does have the power to disapprove a proposed sale recommended by a trustee or debtor-in-possession if it has an awareness there is another proposal in hand which, from the estate's point of view, is better or more acceptable . . . ." In re Broadmoor Place Invs., L.P., 994 F.2d 744, 746 (10th Cir. 1993).  The proper course is illustrated in In re Financial News Network, Inc., 980 F.2d 165, 169 (2d Cir. 1992), in which the court highlighted that the "substance of the bankruptcy court's principal responsibility . . . is to secure for the benefit of creditors the best possible bid." Id.  In that case, the debtor, Financial News, solicited purchasers for its media assets and two potential purchasers emerged at the forefront—CNBC and a Dow Jones affiliate ("Dow Jones"). Id. at 166.  After the bankruptcy court held an evidentiary hearing on the bids but did not rule from the bench, Dow Jones increased its offer, leading CNBC to object on the basis that bidding had closed. Id. at 167-68.  The bankruptcy court, however, considered Dow Jones's new proposal and allowed CNBC to revise its bid. Id.  CNBC ultimately won the sale but appealed the higher price that it paid. Id.  The Second Circuit affirmed, agreeing with the district court's decision to reopen bidding, because that "process best balanced the competing considerations of finality in the bidding process and fairness to the bidders against the interests of creditors in securing the highest sales price." Id. at 170.

Here, KK-PB should have been afforded the same relief and its bid considered, but the Private Sale Procedures Order—purportedly under the original procedure even though that procedure had been scrapped at the Debtor's request just seven days earlier—totally excluded KK-PB from bidding.  The auction process should not have been foreclosed—at a cost to the Debtor's estate of at least $1 million—by the Bankruptcy Court's Sale Order.

#### IV.     The Bankruptcy Court Abused Its Discretion in Approving the Sale to LR

The Bankruptcy Court had no basis to approve the sale of the Assets to LR and rule that the Debtor had a reasonable business justification for selecting the LR Bid as the highest and best, when the KK-PB Offer would have yielded an extra $1 million cash recovery for the estate. (A0397 ¶ L; A0411-12; A0414; A0485; A0487; A0489-90; A0495-97).

To sell property of the estate outside the ordinary course under section 363(b)(1) of the Bankruptcy Code, a debtor in possession must satisfy the business judgment test.  See In re Diplomat Constr., Inc., 481 B.R. 215, 218–19 (Bankr. N.D. Ga. 2012); In re Tom's Foods, Inc., No. 05-40683-RFH, 2005 Bankr. LEXIS 2062, at *6 (Bankr. M.D. Ga. Sept. 23, 2005).  To make that determination, courts examine whether "a) sound business justification exists for the sale; b) fair and reasonable consideration is provided; c) the transaction has been proposed in good faith; and d) adequate and reasonable notice is provided."  In re N. Am. Techs. Group, Inc., No. 10-20071, 2010 Bankr. LEXIS 5834, at *6-7 (Bankr. E.D. Tex. Aug. 16, 2010); see also In re MF Glob. Inc., 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012).

First, the Debtor's agreement to sell its Assets to LR through the Closed *Private* Sale demonstrates the Debtor's lack of good faith and abdication of its fiduciary duties—the Debtor was more interested in appeasing LR than in maximizing the value of the estate.  Rather than holding the Public Auction (as originally scheduled) just eight days after the hearing, the Debtor preferred to negotiate "behind the scenes" with LR and cut off any additional bids.  (A0692:15-23).  The LR APA tied the Debtor's (and the Bankruptcy Court's) hands to a private process that precluded competitive bidding and failed to maximize the value of the Debtor's Assets.  See In re Atlanta Packaging Prod., Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("Competitive bidding yields higher offers and thus benefits the estate.  Therefore, the objective is 'to maximize the bidding, not to restrict it.'" (quoting In re The Ohio Corrugating Co., 59 B.R. 11, 13 (Bankr. N.D.

Ohio 1985))).  "In order to achieve the goals of maximizing the value of the estate and protecting the interests of creditors, the court has plenary power to provide for competitive bidding."  In re Summit Corp., 891 F.2d 1, 5 (1st Cir. 1989).

The Private Sale Procedures provided: (i) that **only** LR and RREF could bid on the Assets and all other bidders were excluded, and (ii) that RREF had only **one chance** to submit an over-bid, but that LR could respond with a ***final bid*** which, under the LR APA, the Debtor was obligated to accept.  (A0343 ¶¶ 5-6; A0272-73 §§ 8.2, 8.4).  Indeed, LR's right to submit a "final bid," under the "Right of First Refusal" provision of the LR APA, (A0273 § 8.4), was a death blow to any competitive auction process for the Debtor's Assets (even to the limited competition from RREF as the only other permitted bidder).  E.g., In re Adelphia Communs. Corp., 359 B.R. 65, 86-87 (Bankr. S.D.N.Y. 2007) (citing In re Mr. Grocer, Inc., 77 B.R. 349 (Bankr. D.N.H. 1987)) (discussing the chilling effect on bidding caused by rights of first refusal).  LR's Right of First Refusal, combined with the appropriately titled "Anti-Solicitation" provision of the LR APA (A0273 § 8.5), guaranteed that there would never be a competitive auction for the Assets.  Indeed, Section 8.5 expressly states: "In the event [LR] exercises its right [to make a final bid], ***[Debtor] shall be prohibited from soliciting any further competing offers and shall be required to close any timely offer made by [LR] in compliance with Section 8.4 hereof***".  (A0273 § 8.5 (emphasis added)).  The LR APA also does not include a "fiduciary out," which would allow the Debtor to terminate the LR APA if it is not consistent with its fiduciary duties.  (See A0266-89).  In short, the LR APA shows LR's complete dominion over the Debtor and the sale process, which was shown further at the Sale Procedures Hearing, when the Debtor urged the Bankruptcy Court to approve the LR APA only two days after learning of LR's offer and without a final sale hearing.  (See A0696:21-A0697:16).

Second, the Debtor declined the KK-PB Offer without any deliberation or attempt at good faith negotiation—demonstrating that its decision was not based on business judgment or made in good faith, but, rather, based on personal animus towards Mr. Straub.  The Debtor took no time to analyze the KK-PB Offer and did not make a good faith attempt to negotiate with KK-PB.  (A0610:6-12).  The Debtor's manager, Mr. Cary Glickstein, also made it clear in his testimony that the Debtor rejected the KK-PB Offer not because of any business reason but because of the Debtor's personal animosity towards Mr. Straub.  (A0607:17–A0610:1).  Indeed, he testified that even the additional $1 million for creditor recoveries was not enough to convince him to work with Mr. Straub.  (A0607:22–A0608:4).  Approving the sale under those circumstances—where the Closed Private Sale price was inadequate and there was a superior cash offer for the Assets—was a clear abuse of discretion, because where, as here, offer and offerors are comparable, "in a liquidation case it is 'legally essential' to approve the highest offer."  In re Gulf States Steel, 285 B.R. 497, 517 (Bankr. N.D. Ala. 2002) (internal citation omitted).  The Bankruptcy Court should not have approved the sale to LR because LR had not made the highest and best offer.

Third, the Bankruptcy Court's clearly erroneous findings in the Sale Order and the Deny Stay Order show that the Bankruptcy Court misunderstood the KK-PB Offer and was not in a position to determine whether the Debtor exercised sound business judgment.  The Private Sale Procedures Order—requested on behalf of LR and designed to eliminate competitive bidding—was neither "designed to maximize recovery for the Debtor's estate" nor "constitute[d] a sound, fair, reasonable and appropriate exercise of the Debtor's business judgment."  (See A0341 ¶ B).  Although the Bankruptcy Court found that the sale to LR was "the only current viable alternative for preserving and capturing the value of the Assets for the benefit of the Debtor's estate," (A0397 ¶ K), that finding simply ignores KK-PB's willingness—repeatedly made clear to the Bankruptcy

Court—to make higher and better cash bids.  Although the Bankruptcy Court found that KK-PB's offer did not account for the settlement with the Town of Palm Beach, (A0581:8-11), KK-PB made it clear to the Bankruptcy Court, at the March 8, 2019 Sale Hearing, that it would increase its offer by nearly $5 million to cover the Palm Beach Claim—even though Palm Beach had been willing to settle that claim with LR for $250,000.00—and that it was willing to *deposit* the *entire* purchase price with the Debtor.  (A0582:5-13; A0168-70 ¶ 19; A0248 ¶ 25; A0583:12–A0584:23; A0615:7-21).  Although the Bankruptcy Court found in the Sale Order that KK-PB's proposal "would require a delay of at least a month for an additional auction procedure," (A0413), KK-PB clearly proposed that the auction take place <u>within</u> a month, (A0515:8-15).

The Bankruptcy Court's abuse of its discretion in entering the Sale Order is particularly well illustrated by two erroneous findings in the Deny Stay Order that relate to the sale process. <u>First</u>, the Bankruptcy Court found that Kids2, LLC was the bidder, (A0477; A0479; A0487-88), even though KK-PB made it clear at the Sale Hearing that KK-PB is bidding on behalf of its *designee* Kids2, LLC, which, like KK-PB, is wholly owned by Mr. Straub, (A0586:6-13).  <u>Second</u>, the Bankruptcy Court found that the $50 million cashier's check that KK-PB brought to the Sale Hearing did not demonstrate Kids2, LLC's ability to close, (A0491-92), but KK-PB stated at the Sale Hearing that it would place the *entire purchase price* in escrow pending the auction and closing, (A0615:7-15).  Those two findings show that the Bankruptcy Court fundamentally misunderstood KK-PB's offer, further exposing the infirmities of the Sale Order.

## <u>CONCLUSION</u>

WHEREFORE, KK-PB respectfully requests that this Court enter an order (1) reversing the Orders; and (2) remanding to the Bankruptcy Court with instructions to enter an order setting procedures for a public auction of the Debtor's Assets.

Oral argument has already been scheduled in this matter.  For the avoidance of doubt, KK-PB requests oral argument.

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface and type-style requirements of Fed. R. Bankr. P. 8015, as modified by order of this Court and after consultation with chambers.  I also certify that this brief contains 21 pages, excluding those items under Fed. R. Bankr. P. 8015(g), and thus is in compliance with the prior order of this Court.

Dated: March 29, 2019
Miami, Florida

WHITE & CASE LLP

By: *s/ James N. Robinson*
    James N. Robinson
    Florida Bar No. 608858
    John K. Cunningham
    Florida Bar No. 542490
    David P. Draigh
    Florida Bar No. 624268
    Southeast Financial Center, Suite 4900
    200 South Biscayne Boulevard
    Miami, Florida  33131-2352
    Telephone: (305) 371-2700
    Facsimile:  (305) 358-5744

    *Counsel for KK-PB Financial, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 29th day of March, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the Court's CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Dated: March 29, 2019
Miami, Florida

WHITE & CASE LLP

By:  *s/ James N. Robinson*
James N. Robinson
Florida Bar No. 608858
John K. Cunningham
Florida Bar No. 542490
David P. Draigh
Florida Bar No. 624268
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida  33131-2352
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744

*Counsel for KK-PB Financial, LLC*

**SERVICE LIST**

**Philip Joseph Landau**
**Bernice Cindy Lee**
**Eric Scott Pendergraft**
Shraiberg Landau & Page, PA
2385 NW Executive Center Drive, Suite 300
Boca Raton, FL 33431
Telephone: 561-443-0800
Fax: 561-998-0047
Email: blee@slp.law
Email: ependergraft@slp.law
Email: plandau@slp.law

*Counsel for Appellee*

**Eyal Berger**
Akerman LLP
350 East Las Olas Boulevard, Suite 1600
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Fax:  (954) 463-2224
Email: eyal.berger@akerman.com

*Counsel for LR U.S. Hotels Holdings, LLC*

**Allen R. Tomlinson**
Jones Foster Johnston & Stubbs, P.A.
505 South Flagler Drive, Suite 1200
West Palm Beach, Florida 33401
Telephone: (561)-659-0442
Fax: (561) 650-5300
Email: atomlinson@jonesfoster.com

*Counsel for Town of Palm Beach and Town of Palm Beach Code Enforcement Board*