**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:19-cv-80343-ROSENBERG
CASE NO. 9:19-cv-80351-ROSENBERG
CASE NO. 9:19-cv-80363-ROSENBERG**

IN RE: 160 Royal Palm, LLC,

    Debtor.
_____/

## ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS

**THIS MATTER** is before the Court on Appellant KK-PB Financial LLC's ("Appellant") appeal of three separate orders from the Bankruptcy Court below. *See* Case No. 9:19-cv-80343, DE 1; Case No. 9:19-cv-80351, DE 1; Case No. 9:19-cv-80363, DE 1.

### I. PROCEDURAL BACKGROUND

Appellant filed four bankruptcy appeals between March 12, 2019 and March 15, 2019, all of which arise out of the same bankruptcy proceeding, S.D. Fla. Bankruptcy Case No. 18-19441-BKC-EPK. These appeals were initially assigned to three different District Court judges, but they have all since been transferred to the undersigned, pursuant to Local Rule 3.8 and Section 2.15.00 of the Court's Internal Operating Procedures based on the lower-numbered case, 19-80342-RLR. *See* Case No. 9:19-cv-80342, DE 3; Case No. 9:19-cv-80343, DE 7; Case No. 9:19-cv-80351, DE 10; Case No. 9:19-cv-80363, DE 5. The orders on appeal are as follows:

| District Court Case Number | Bankruptcy Order Title | Bankruptcy Docket Entry | Abbreviated Title |
|---|---|---|---|
| 9:19-cv-80342 | *Order Estimating the Claim of KK-PB Financial, LLC and Denying Ability to Credit Bid* | 603 | "Estimation Order" |

| 9:19-cv-80343 | *Order (I) Granting Expedited Motion Seeking Approval of Procedures for Amended Sale Process and (II) Scheduling Final Hearing to Consider Approval of Sale of Assets Free and Clear of Liens, Claims and Encumbrances* | 619 | "Private Sale Procedures Order" |
|---|---|---|---|
| 9:19-cv-80351 | *Order Approving Sale of Assets to LR U.S. Hotels Holding, LLC Free and Clear of All Liens, Claims, and Encumbrances* | 651 | "Sale Order" |
| 9:19-cv-80363 | *Order Denying Motion to Stay Orders Pending Appeal* | 668 | "Deny Stay Order" |

On March 13, Appellant moved to stay the Bankruptcy Court's Sale Order, pending appeal. Case No. 19-cv-80351, Appellant's Mot. to Stay, DE 6. Appellant supplemented its Motion the same day. *See* Case No. 19-cv-80351, DE 9. On March 14, this Court denied the Emergency Motion to Stay. Order, Case No. 19-cv-80351, DE 13. Appellant immediately appealed to the Court of Appeals for the Eleventh Circuit. *See* Case No. 19-cv-80351, DE 14. The Bankruptcy Court also denied the Motion to Stay filed in that court on March 14. *See* Deny Stay Order, Bankr. DE 668. On appeal from this Court, the Eleventh Circuit denied Appellant's Emergency Motion to Stay a few days later, on March 18. *See* Court of Appeals Case No. 19-10962-F.

Appellant next requested expedited briefing in three of its four appeals. *See* Case No. 9:19-cv-80342, DE 7-2; Case No. 9:19-cv-80343, DE 9-2; Case No. 9:19-cv-80351, DE 16-2. Appellee joined in requesting the expedited briefing of the appeal of the Sale Order and provided the Court with a recommended briefing schedule. *See* Case No. 19-80351, DE 18. Appellant filed a reply to put forth its own briefing schedule. *See* Case No. 19-80351. DE 19. The Court considered these requests and expedited the briefing on the appeals of the Private Sale Procedures Order, the Sale Order, and the Deny Stay Order.[1] *See* Omnibus Order, Case No. 19-80351, DE 20. The Court

---

[1] The Court indicated in a footnote of its Omnibus Order that it would address the request to expedite briefing of the Estimation Order Appeal by separate order. At oral argument on the appeals, the Court inquired of the parties what

2

acknowledged in its Order that although the expedited briefing schedule would be "strenuous," it would benefit both parties. *Id.* at 2. The Court also consolidated the appeals of the Private Sale Procedures Order, the Sale Order, and the Deny Stay Order, because "they involve inextricably intertwined questions of law and fact." *Id.* at 2. As part of the consolidation of these appeals, the Court ordered the parties to make all future filings in Case No. 19-cv-80351.[2] *Id.* at 3. This Order therefore addresses only the Private Sale Procedures Order, the Sale Order, and the Deny Stay Order. The Estimation Order appeal has not yet been briefed.

In addition to providing the parties with an expedited briefing schedule, the Court scheduled oral argument on the three appeals, as requested by Appellant. *See* Appellant's Reply, DE 19, 4; Order Setting Hearing, DE 22; *see also* Order Regarding Hearing, DE 32.

Following the Court's briefing schedule, Appellant filed its Designation of the Record and Statement of Issues on March 22. DE 21. Appellee filed its own Designation of the Record and Statement of Issues on March 27. DE 23. Appellant timely filed its initial brief on March 29, *see* DE 30, and Appellee filed its response brief a day ahead of schedule on April 4, *see* DE 33. The Court then heard oral arguments on the appeals on April 5,[3] and Appellant filed its Reply brief on April 8. *See* DE 34; DE 35.

---

their preferred briefing schedule would be for the Estimation Order Appeal, and the parties agreed that expedited briefing was at this time, not necessary (although Appellant noted that it might request expedited briefing in the future). Accordingly, that request to expedite is now denied as moot, and the same will be reflected in the docket of Case No. 9:19-cv-80342.

[2] Accordingly, for the purposes of this Order, citations to docket entries refer to the record in Case No. 19-cv-80351. The Court will clearly identify when record citations are to a different District Court docket or to the Bankruptcy Court's docket.

[3] As noted in the Court's Order Setting the Hearing, it was necessary to hold oral argument before Appellant had filed its reply brief, because the Court anticipated being in trial for the foreseeable future. *See* Order Setting Hearing, DE 22.

The Court has considered the parties' briefing outlined above, the parties' oral arguments, the record, and is otherwise fully advised in the premises. For all of the reasons set forth below, the Court **AFFIRMS** the Bankruptcy Court's Private Sale Procedures Order, Sale Order, and Deny Stay Order.

## II.     FACTS[4]

The three appeals addressed by this Order arise out of the voluntary bankruptcy of the Debtor-Appellee, 160 Royal Palm LLC (hereinafter, "Debtor"). *See* Bankr. DE 1. The Debtor owns the Palm House Hotel (the "Hotel"), which is a "partially-constructed hotel/condominium" located in Palm Beach, Florida. Appellant's App'x, A0071.[5] The Hotel has a "tortured history. . . No owner has been able to complete the project. It sits dormant and neglected." Estimation Order, Bankr. DE 603. Appellant, KK-PB Financial, LLC ("KKPB") is a creditor of Debtor and is wholly owned and controlled by Glenn Straub, an area developer and former owner the Hotel. A0478–79. Appellant is a creditor by virtue of Claim 72-1, which was originally held by New Haven Contracting South, Inc. *Id.* Appellant also filed its own claim, Claim 70-3. *Id.* However, the 70-3 Claim was disallowed by the Bankruptcy Court and is subject to a separate appeal. *See* Bankr. DE 603; Case No. 19-cv-80342.

Debtor voluntarily filed for bankruptcy on August 2, 2019. A001–A0070. Beginning in October of that year, Debtor began to market the property for sale. *See* A0071. These marketing efforts included the retention of Cushman & Wakefield U.S., Inc., as the Debtor's exclusive real

---

[4] The following facts are not in dispute. *See* Appellant Br., 9. The Court relies on the parties' appendices to their briefs and the Bankruptcy Court's docket.

[5] All references to the Appellant's Appendix, found at DE 30-1, are hereinafter made using A####.

estate broker to "facilitate the sale of the Real Property and to seek and solicit potential purchasers." *See* Application to Employ Cushman & Wakefield, Bankr. DE 19; *see also* Order Approving Employment of Cushman & Wakefield, Debtor's App'x, DA001.[6]

On October 1, 2018, Debtor sought approval to sell the Hotel through a public auction, with a stalking horse bidder, RREF II Palm House LLC. *See* Mot. to Approve Procedures, A0071. The stalking horse bid was for thirty-two million dollars. *See id.* The Bankruptcy Court granted Debtor's Motion and approved of the procedures on October 16, 2018. Bankr. Order, A0203 (amended at A0216, A0231, A0235, and A0237). Under this initial sale procedure, the bid deadline was set for November 9, 2018, with an auction and sale hearing set for November 16, 2018. *See id.*

The public sale process was interrupted by litigation between Appellant KKPB, the Debtor, and other creditors of the Debtor, namely, certain EB-5 investors.[7] Debtor sought to limit Appellant's ability to credit-bid on the Hotel property, and Appellant simultaneously sought to estimate its claim, Claim 70-3. *See* Deny Stay Order, Bankr. DE 668, 7. Both motions were set for a hearing on December 6, 2018.[8] *Id.* ohhh

Meanwhile, on November 6, 2018, the Bankruptcy Court approved the Debtor's first motion to approve a settlement agreement with the Town of Palm Beach (the "Town"). *See* Order

---

[6] All references to the Appellee-Debtor's Appendix, found at DE 33-1, are hereinafter made using DA####.

[7] "The EB-5 investors are dozens of foreign investors who claim that tens of millions of dollars they sent to the United States were funneled through the hotel project and allegedly fraudulently misappropriated by persons then in control of the debtor and those in conspiracy with them." Deny Stay Order, Bankr. DE 668, 7. *See also* Li v. Walsh, Case No. 9:16-cv-81871-KAM (S.D. Fla., filed 11/14/2016).

[8] The hearing on the motions was ultimately continued until January 8, 2019, lasted four days, and resulted in the Estimation Order that is subject to appeal in District Court Case No. 19-cv-80342. *See* Estimation Order, Bankr. DE 603.

Approving Settlement, DA043. The Town is one of the Debtor's creditors and asserts a secured claim in excess of four million dollars. *See* DA292; DA319. The Town's claims against Debtor continue to accrue daily. Deny Stay Order, Bankr. DE 668, 8. The Debtor negotiated a conditional settlement with the Town for $250,000, which required the execution of certain conditions, including payment by December 31, 2018 and sale to a qualified buyer. *See* Town Settlement. Mot., DA003. The parties later amended the settlement agreement to allow Debtor to make payment by April 30, 2019. Amended Mot., DA150. The Bankruptcy Court granted the Debtor's Amended Motion to Approve the Town Settlement on February 6, 2019. *See* Order Approving Amendments, DA206. In addition to settling the Town's four million dollar claim for $250,000, the Settlement extends development approvals for the Hotel through April 30, 2019, "provided that a qualified buyer purchases the Property and undertakes certain actions by that date." Debtor's Brief, DE 33, 11.

Because of the delays in litigating KKPB's right to credit-bid and the estimation of its claim, the Debtor moved to extend the bidding process. Deny Stay Order, Bankr. 668, 8. The Bankruptcy Court granted that request and reset the final sale hearing for December 14, 2018. *Id.* The bidding process was once again pushed back, in order to provide time to conduct necessary discovery and a hearing on KKPB's credit-bidding and claim estimation. *Id.* The hearing on these matters lasted four days in January and February of 2019. *Id.* During this hearing, Debtor and Appellant engaged in settlement discussions including a possible sale of the Hotel to Appellant. *See id.*; Motion to Approve KKPB Settlement, DA051. "In light of the pending settlement, at the debtor's request the [Bankruptcy] Court again delayed the bid deadline to March 4, 2019, and the auction and sale hearing to March 8, 2019." Deny Stay Order, Bankr. 668, 9. However, the

settlement and sale agreement fell through when KKPB "failed to tender the deposit under the settlement," so the Bankruptcy Court did not approve the proposed settlement with and sale to KKPB. *Id.* at 10. On February 5, the public sale hearing, with RREF remaining as the stalking horse bidder, was finally rescheduled to March 8, 2019, with final bids due on March 4, 2019. A0237–39.

On February 26, 2019, the Debtor moved to approve a new sale procedure, A0240–338, which is the subject of the appealed Private Sale Procedures and Sale Orders. In its Motion, Debtor sought the Bankruptcy Court's approval of a private sale to a new bidder, LR U.S. Hotels Holdings, LLC (the "Buyer" or "LR"). A0240–338. The Motion set forth the terms of the asset purchase agreement ("APA"), which among other things, required the Debtor to withdraw the previous motion to approve public sales procedures and to sell the Hotel to LR in a private sale, subject only to overbids by RREF, the stalking horse bidder. *Id.* In exchange, LR would pay $39.6 million for the Hotel, $7.6 million more than the $32 million stalking horse bid from RREF. *Id.* The Bankruptcy Court held a hearing on the Motion to Approve the Private Sale on February 28; 2/28/19 Hr'g. Tr., DE 26; granted Debtor's motion and approved the private sale procedures on March 1, 2019; Bankr. DE 619; and finally approved the sale of the hotel to LR free and clear of all liens, claims and encumbrances on March 12, 2019; Bankr. DE 651. Appellant then proceeded to appeal the Bankruptcy Court's Orders as outlined above.

### III. LEGAL STANDARD

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). "The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, but reviews a bankruptcy court's legal

7

conclusions de novo." *Ritenour v. Osborne*, Case No. 10-60247-KMM, 2012 WL 912947, at *1 (S.D.Fla. Mar. 16, 2018) (quoting *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996)). "A finding of fact is clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *In re Petricca*, Case No. 2:14-cv-615-FTM-38, 2015 WL 4348661, at *2 (M.D. Fla. July 14, 2015) (citing *Crawford v. W. Elec. Co., Inc.*, 745 F.2d 1373, 1378 (11th Cir. 1984)).

"Where a matter is committed to the discretion of the bankruptcy court, the district court must affirm unless it finds that the bankruptcy court abused its discretion." *In re Phillips*, Case No. 2:12-cv-585-FTM-29, 2013 WL 1899611, at *1 (M.D. Fla. May 7, 2013) (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2006)). A lower court abuses its discretion "if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 77 (11th Cir. 2013) (citations omitted). Under the abuse of discretion standard, the lower court has "a range of choices . . . so long as any choice made by the court does not constitute a clear error of judgment." *Id.* (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

**IV. DISCUSSION**

Appellant argues that the Bankruptcy Court abused its discretion in allowing Debtor to withdraw the public auction procedures first approved of in the fall, in permitting a private sale to LR, and in approving the sale to LR. Appellant also asserts that it had standing to object in the Bankruptcy Court below and has standing to appeal to this Court. Debtor responds that as a threshold matter, Appellant does not have standing to pursue appeals of the Private Sale Procedures

Order or Sale Order. In addition, Debtor maintains that Appellant has failed to establish that the Bankruptcy Court abused its discretion in any regard. The Court first addresses the parties' arguments regarding the validity of the Bankruptcy Court's Orders.

    A.  <u>The Withdrawal of Public Sale Procedure and Approval of Private Sale Procedure</u>

"A Chapter 11 debtor in possession has the power of a trustee to use or lease property of the estate under § 363(b)." *In re SW Boston Hotel Venture, LLC*, No. 10-14535-JNF, 2010 WL 3396863, at *3 (D. Mass. Bankr. Aug. 27, 2010); *see also* 11 U.S.C. §§ 1107, 1108. "Courts approve a Chapter 11 debtor in possession's use, sale or lease of property of the estate where the debtor has used reasonable business judgment and articulated a business justification for such use." *In re SW Boston Hotel Venture, LLC*, 2010 WL 3396863, at *3 (citing *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992)).

The trustee or debtor-in-possession's "management of the procedural details surrounding bidding and sale are 'ultimately a matter of discretion that depends upon the dynamics of the particular situation.'" *In re Phillips*, Case No. 2:12-cv-585-FTM-29, 2013 WL 1899611, at *10 (M.D. Fla. May 7, 2013) (quoting *In re Nuttery Farm, Inc.*, 467 F. App'x 711, 712 (9th Cir. 2012)). Therefore, the debtor[9] "is entitled to exercise [its] 'business judgment' in deciding which bid to accept, and this business judgment is entitled to 'great judicial deference.'" *Id.* (quoting *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)). Notably, the debtor-in-possession *may* exercise its business judgment in accepting a "lower monetary bid." *Id.* (citing *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010)). "A debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business

---

[9] As the debtor-in-possession in a Chapter 11 bankruptcy proceeding, Debtor "has the same rights and duties as a trustee." *Int'l Yacht & Tennis, Inc. v. Wasserman*, 922 F.2d 659, 661 (11th Cir. 1991).

judgment, but only on bad faith, or whim or caprice." *In re SW Boston Hotel Venture, LLC*, 2010 WL 3396863, at *3.

Appellant argues that the Bankruptcy Court abused its discretion in permitting the Debtor to withdraw the public sale procedures and approving the Private Sale Procedure, thereby eliminating other bidders. *See* Private Sale Procedures Order, Bankr. DE. 619; *see also* Appellant Br., DE 30, 20–26. The Court considers these arguments together, as they are closely intertwined as aspects of the APA between LR and the Debtor.

As noted above, the Debtor had broad discretion to determine the appropriate procedures for marketing and selling the bankruptcy estate's sole asset, the Hotel property. *See In re Phillips*, 2013 WL 1899611, at *10. Here, the Court finds nothing in the record to overcome the deference that is owed to the Debtor's business judgment and the Bankruptcy Court's findings of fact. The record reveals that the Debtor had actively marketed the property, employed an international real estate broker to help sell the property, and had been continuously working towards that sale since as early as October 2018. In particular, the Bankruptcy Court did not clearly err in crediting the Debtor's manager, Cary Glickstein's testimony regarding the Debtor's "extensive marketing" of the property and his conclusion that the LR offer was worthy of pursuit. Sale Order, Bankr. DE 651.

Appellant insists that the Bankruptcy Court's withdrawal of the public auction procedures and approval of the private sale procedure occurred far too quickly. Appellant Br., DE 30, 20–22. Appellant further suggests that the Bankruptcy Court was "wrong to find that the Private Sale Procedures was a mere continuation of the withdrawn public bid process." *Id.* The record is clear that the public auction was initially scheduled for November, 2018. It was eventually pushed back

to March 8, based on the Debtor's various motions. Debtor, within its discretion and in acting in accordance with its business judgment, was entitled to conclude that the public auction was no longer in the best interests of the Debtor's creditors. It was also within the Debtor's discretion to expedite the process to be able to close as soon as possible on the attractive terms offered by LR. While the Court agrees with Appellant that "the need for expedition, . . . is not a justification for abandoning proper standards," the Court does not find that proper standards were abandoned in this case. Appellant Br., DE 30, 20 (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). All parties were on notice that the Debtor was actively trying to sell the Hotel, since October 2018. Debtor moved for approval of the private sale procedure on February 26, 2019, providing all parties with notice of Debtor's intentions to sell the Hotel to LR as quickly as possible. This Court also notes that the Bankruptcy Court's docket is replete with the Debtor's motions to expedite various procedures, *see e.g.*, Bankr. DE 524, which demonstrates the Debtor's repeated attempts to resolve this matter as quickly as possible. Every time the sale of the Hotel is delayed, the Town's claims continue to accrue, and the creditors' ultimate payment date is further delayed. Accordingly, this Court finds that the Bankruptcy Court did not abuse its discretion in allowing the withdrawal of the public auction procedures and approving the private sale procedure.

Appellant also argues that it was an abuse of discretion to eliminate other potential bidders from the sale process, including KKPB. Appellant Br., DE 30, 21; Appellant Reply, DE 35, 13–20. Again, this determination was subject to the Debtor's business judgment. As Appellant acknowledged at the April 5th hearing, private sales are not unheard of in bankruptcy proceedings, and are in fact expressly contemplated by the bankruptcy rules. *See* Fed. R. Bankr. P. 6004(f)(1). Appellant argues that the Debtor should have considered other offers, including its own, prior to

finalizing the sale to LR. However, this argument ignores the fact that the LR APA was conditioned on the use of a private sale. Therefore, the Debtor's choice was between taking advantage of the LR APA, which offered finality, certainty, and a price $7.6 million above the stalking horse bid, and the uncertainty of delaying the sale yet again,[10] for the promise of a bid just 2.5% higher than the LR bid.[11] Although a different debtor might have come to a different conclusion, the Debtor here has been clear that it is pursuing a "bird in the hand" approach and sought the finality and certainty of the LR offer. *See* 2/28/19 Bankr. Hr'g. Tr., A0693; *see also* Appellee Br., DE 33. The use of a private sale, to take advantage of the offer made by LR, was within the Debtor's business judgment, and the Court sees no reason to supplant its judgment for the business judgment determination of the Debtor.

Appellant cites *In re Financial News Network Inc.* in support of its assertion that the Bankruptcy Court should have extended the bidding process as the Bankruptcy Court did in *Financial News*. Appellant Br., DE 30, 16; 980 F.2d 165, 166 (2d Cir. 1992). In that case, the Second Circuit Court of Appeals considered whether the Bankruptcy Court abused its discretion in considering a post-deadline bid on a bankruptcy asset. 980 F.2d at 166. The *Financial News* court was therefore presented with an inverse of the situation here – there, a post-deadline bid was considered, whereas here, a pre-deadline bid was considered and accepted to the exclusion of other public bids. Appellant's argument ignores the reasoning of the Second Circuit's affirmance of the Bankruptcy Court's action: "[B]ankruptcy proceeding[']s substance should not give way to form,

---

[10] Appellant contests how much of a delay its bid would have caused. *See* Appellant Reply, DE 35, 15. Although the date of KKPB's proposed auction is in dispute, there is *no* dispute that Appellant requested some extension of the auction. *See* 3/8/19 Bankr. Hr'g. Tr., A0515.

[11] Appellant contends that the KKPB bid would provide at least $1 million more than the LR offer at $39.6 million.

. . . a bankruptcy judge's *broad discretionary* power in conducting the sale of a debtor's assets should not be narrowed by technical rules mindlessly followed." *In re Financial News*, 980 F.2d at 169 (emphasis added). Furthermore, "first and foremost is the notion that a bankruptcy judge must not be shackled with unnecessarily rigid rules when exercising undoubtedly broad administrative power granted him under the [Bankruptcy] Code." *Id.* (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983)). In *Financial News*, the Bankruptcy Court found appropriate reasons to extend a bidding procedure, while here, the Bankruptcy Court found reasons to limit bidding. Nonetheless, both decisions are based in the Bankruptcy Court's sound exercise of its discretion to structure the sale procedure. The Court is therefore unpersuaded that *Financial News* compels the Bankruptcy Court here to allow for KKPB's bid.

Thus, the Court finds the Bankruptcy Court did not abuse its discretion in granting the Debtor's motions to withdraw the public sale procedures and approve the private sale procedure.

B. Approval of the Sale of the Hotel to LR

Having found no error in the Bankruptcy Court's approval of the private sale procedure (Bankr. DE 619), the Court turns to the Bankruptcy Court's final approval of the sale of the Hotel to LR (Bankr. DE 651). To sell a bankruptcy asset outside the ordinary course under Section 363(b)(1) of the Bankruptcy Code, a debtor in possession must satisfy the business judgment test as outlined above. *See, e.g.*, *In re Diplomat Constr., Inc.*, 481 B.R. 215, 218–19 (Bankr. N.D. Ga. 2012). In addition, the Bankruptcy Court must then "determine whether (i) the debtor has provided all interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith." *In re MF Global Inc.*, 467 B.R. 726, 730 (S.D.N.Y. April 6, 2010).

*1. Did the Debtor provide an adequate business justification for the sale to LR?*

Yes. As explained above, Debtor has taken the "bird in hard" approach in accepting the LR offer. The LR offer presents a stable and certain offer, that exceeds the stalking horse bid by $7.6 million. The LR offer was also attractive to the Debtor, because it would allow the Debtor to take advantage of a valuable settlement offer with the Town. While the KKPB offer ostensibly *could* provide the estate with an additional million dollars, and indemnify the Debtor against the Town's potential claims, the Court credits the Debtor's concerns about the uncertainty of that offer. Indeed, the Debtor sought a settlement and sale with KKPB once in the past, which fell through, because KKPB defaulted.

Appellant vigorously argued at oral argument on April 5 that the Debtor should have accepted its higher bid. However, the Court notes that while a debtor has a duty to "maximize the return to a bankruptcy estate," which "often does require [the] recommendation of the highest monetary bid, *overemphasis of this usual outcome overlooks a fundamental truism, i.e., a 'highest' bid is not always the 'highest and best' bid*. The inclusion of 'best' in that conjunction is not mere surplusage." *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) (citations omitted) (emphasis added). *See also In re Diplomat Constr., Inc.*, 481 B.R. at 218–19 ("The highest bid does not always equate to the best bid for the estate."); *In re Gulf States Steel, Inc. of Al.*, 285 B.R. 497, 516 (N.D. Al. 2002) ("[C]ourts have authorized the acceptance of the lower of competing bids because the lower bid provides greater benefit to the estate than the higher bid.").

Appellant also alleges that Debtor only rejected KKPB's higher offer out of personal animus towards KKPB's owner, Mr. Straub. The Debtor provides a number of explanations for its rejection of the KKPB offer, including, among other things, Mr. Straub's litigiousness. *See*

Appellee Br., DE 33, 33–35. Significantly, the Bankruptcy Court "credit[ed] *all* of [the Debtor's manager,] Mr. Glickstein's testimony on this issue, which was thorough and credible." Sale Order, Bankr. DE 651, 6. The Bankruptcy Court went on:

> Among other things, Mr. Glickstein testified that the potential for about a $1 million increase in the overall sale price was not worth the risk that KK-PB, and its principal, Mr. Glenn Straub, would take action that would greatly increase the costs to the estate. Mr. Glickstein pointed to specific experience with Mr. Straub in this very case to support [his] view that the potential increase in recovery was fair outweighed by the risk of additional litigation. Mr. Glickstein stressed the strength of the purchaser identified in the sale motion. . . .

*Id.*

While Appellant objects to the Bankruptcy Court's findings of fact, *see* DE 35, 19, this Court cannot agree that the Bankruptcy Court's findings were clearly erroneous. On the record before this Court, the Debtor had real concerns about the viability of the KKPB offer for a variety of reasons – including the fear of additional litigation. Though Appellant may characterize this as "animus," the avoidance of litigation is a legitimate business objective. And, Appellant could not provide the Court with a single case where a court disallowed a sale because the debtor had concerns about future litigation.

The Debtor's duty is to maximize value to the creditors, and that maximization includes considerations such as finality, stability, and expeditious resolution of the bankruptcy proceeding. The LR offer, although 2.5% lower than the KKPB offer, provided that finality and stability. When asked by the Court at oral argument, Appellant could provide no other reasons why the KKPB offer constituted the highest and best offer *other than* the purported one-million-dollar additional benefit to the estate. Thus, to force the Debtor to forego the LR offer and subject itself to a public auction would require this Court to inappropriately use its own business judgment in place of the Debtor's, which this Court will not do.

*2. Has the Debtor provided adequate and reasonable notice of the sale to interested parties?*

Yes. Based on the history of this case outlined above, all interested parties were well aware that the Hotel would be sold as quickly as possible. Although interested parties were only informed on February 26, 2019 that Debtor sought to sell the property through private sale to LR, the parties have been aware for months that Debtor was actively engaged in attempting to sell the property. Accordingly, the Court finds that the Bankruptcy Court's findings of fact on this point were not clearly erroneous and finds no infirmity with the legal conclusions drawn from those facts.

*3. Was the sale price fair and reasonable?*

Yes. As stated above, the stalking horse bid was for $32 million. The LR offer was for $39.6 million, an increase of $7.6 million, or nearly 24%. The $40.6 million offer from KKPB did not represent the "highest and best offer" in the Debtor's business judgment, for all of the reasons discussed above. Accordingly, the Court finds that the Bankruptcy Court's findings of fact on this point were not clearly erroneous and finds no infirmity with the legal conclusions drawn from those facts.

*4. Is the purchaser proceeding in good faith?*

Yes. Appellant has presented no evidence to suggest LR is not acting in good faith. The Bankruptcy Court made the same conclusion, after hearing the proposed testimony of LR's officer. *See also* Sale Order, Bankr., DE 651, 9. Here too, the Court finds that the Bankruptcy Court's findings of fact on this point were not clearly erroneous and finds no infirmity with the legal conclusions drawn from those facts.

For all of the reasons stated above, the Court **AFFIRMS** the Bankruptcy Court's Private Sale Procedures Order, Bankr. DE 619, and Sale Order, DE 651.

C. Denial of Stay

Finally, the Court also notes that Appellant separately appealed the Bankruptcy Court's Deny Stay Order, Bankr., DE 668. In its brief however, Appellant stated that "the Appellant does not raise any issues with respect to the denial of the emergency stay." DE 30, 1, n. 2. Accordingly, to the extent Appellant has abandoned its appeal of the Deny Stay Order, Bankr. DE 668, the Bankruptcy Court's Order should therefore be affirmed.

In the alternative, this Court has already considered Appellant's Emergency Motion to Stay Orders Pending Appeal in the District Court, DE 6. For all of the reasons stated in the Court's Order Denying the Motion to Stay, the Bankruptcy Court's Stay Denial should also be affirmed.

V. CONCLUSION

For all of the aforementioned reasons, the Court has concluded that the Bankruptcy Court's Orders should be affirmed. Because the Court has concluded that the Bankruptcy Court's Orders should be affirmed, this Court need not reach the parties' arguments regarding Appellant's standing.

1. The following Orders of the Bankruptcy Court are **AFFIRMED:**

| District Court Case Number | Bankruptcy Order Title | Bankruptcy Docket Entry | Abbreviated Title |
| --- | --- | --- | --- |
| 9:19-cv-80343 | *Order (I) Granting Expedited Motion Seeking Approval of Procedures for Amended Sale Process and (II) Scheduling Final Hearing to Consider Approval of Sale of Assets Free and Clear of Liens, Claims and Encumbrances* | 619 | "Private Sale Procedures Order" |
| 9:19-cv-80351 | *Order Approving Sale of Assets to LR U.S. Hotels Holding, LLC Free and Clear of All Liens, Claims, and Encumbrances* | 651 | "Sale Order" |
| 9:19-cv-80363 | *Order Denying Motion to Stay Orders Pending Appeal* | 668 | "Deny Stay Order" |

2. Because all appeals have been resolved in this case, the Clerk of the Court is directed to **CLOSE THIS CASE** for statistical purposes.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 10th day of April, 2019.

Copies furnished to:
Counsel of Record

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE